GULF REFINING CO. *v.* HARRISON *et al.*

(In Banc.   Dec. 9, 1946.   Suggestion of Error Overruled June 9, 1947.)

[28 So. (2d) 221.   No. 36369.]

April 14, 1947.

[30 So. (2d) 44.

[30 So. (2d) 807.

**Buchanan & Harper,** of Laurel, for appellees, Mrs. Rosalie E. S. Calvert, Executrix, et al., on motion.

Green & Green and Irwin W. Coleman, of Jackson, Wilbourn, Miller & Wilbourn, of Meridian, Welch, Cooper & Welch, of Laurel, and C. C. Richmond, of Dallas, Tex., for appellant, Gulf Refining Company, on motion.

**Gillespie, Minniece & Nettles,** of Meridian, and **Jackson & Young,** of Jackson, for appellees, on motion.

Irwin W. Coleman, Green & Green, and C. C. Richmond, all of Jackson, Welch Cooper & Welch, of Laurel, Wilbourn, Miller & Wilbourn, of Meridian, and John E. Green, Jr., of Houston, Tex., for appellant, Gulf Refining Company, on the merits.

304

306

Wells, Wells, Newman & Thomas, of Jackson, for appellants, American Liberty Oil Company, Blue Bird Investment Company, and G. G. Stanford, on the merits.

308

Jackson & Young, of Jackson, and **Gillespie, Minniece & Nettles**, of Meridian, for appellee, Wallace Harrison, on the merits.

310

**Buchanan & Harper,** of Laurel, for appellees, Mrs. Rosalie E. S. Calvert, Executrix, et al., on the merits.

314

**Butler & Snow,** of Jackson, for appellee, Kirby Petroleum Company, on the merits.

**Buchanan & Harper**, of Laurel, for appellees, Mrs. Rosalie E. S. Calvert et als., on suggestion of error.

Jackson & Young, of Jackson, and Gillespie, Minniece & Nettles, of Meridian, for appellee, Wallace Harrison, on suggestion of error.

Ralph L. Landrum, of Jackson, Bidwell C. Adam, of Gulfport, and J. S. Barbour, Sr., and J. S. Barbour, Jr., both of Yazoo City, amici curiae, on suggestion of error.

Argued orally by **Irwin W. Coleman, Garner Green, J. R. Buchanan** and **W. R. Newman, Jr.,** for appellants, and by **R. G. Gillespie** and **Thomas Y. Minniece,** for appellee.

**Alexander, J.,** delivered the opinion of the Court on the motion.

The heirs and devisees of George Calvert deceased file their motion asking in the alternative (1) dismissal of the appeal, or (2) substitution as appellees.

Calvert died during the hearing upon a bill filed by appellant to confirm title as against appellees. This fact was unknown to the parties or to the court until after final decree.

We have examined the several answers to the motion, which contend for a diversity of procedures. We are of the opinion that Calvert was not a necessary party to appellant's suit; that his interests were not involved therein. It is true, in the cross-bills filed with answers, some defendants asserted claims whose establishment could have affected Calvert's interest as well as appellants.

We see no reason to dismiss the entire appeal. The decree, insofar as it may be construed to affect the Calvert interest, was favorable thereto. It was not absolutely void as to the other parties, and was at most only voidable or erroneous as to Calvert. Streeter v. Chicago Title & Trust Co., D.C., 14 F.(2d) 331; Christian, etc., Company v. Dantzler Lbr. Co., 78 Miss. 74, 28 So. 788. Compare McKey v. Torry, 28 Miss. 78. 30 Am. Jur., Judgments, Sec. 38, p. 838. The trial court had acquired jurisdiction of the subject matter, and of the persons of the joint complainants and joint defendants. Without knowledge of any of the parties or the court, Calvert died shortly prior to final decree.

In our opinion, a just and practicable rule, endorsed by modern decisions (Am. Jur., ubi supra), and comporting with an orderly procedure, requires that the motion to dismiss the appeal be overruled. The alternative relief of

revivor by the Calvert heirs is granted so as to allow them to retain oversight over their interests throughout the appeal upon its merits.

So ordered.

**Sydney Smith, C. J.**, did not participate in this decision.

**McGehee, J.**, delivered the opinion of the Court on the merits.

This appeal involves two separate and distinct controversies: (1) One of which is between the appellant Gulf Refining Company and the appellee Wallace Harrison, the appellee Ray M. Walker, and the various vendees of the latter, and which involves the question of whether or not the decree appealed from should be reversed in so far as it subordinates the rights of the said appellant under its lease of October 8, 1943, from George F. Taylor for an undivided three-fourths interest in the oil, gas and other minerals in 268 acres of land to the rights of the appellees, who claim one-half of the said three-fourths undivided interest through a conveyance of October 11, 1943, from the said George Taylor to the said Ray Walker, and through certain mesne conveyances, as innocent purchasers thereof; and (2) the other is between the appellants, American Liberty Oil Company, Blue Bird Investment Company, and G. G. Stanford, who claim the other one-fourth undivided interest in said minerals through a foreclosure of a deed of trust executed on August 4, 1939, by Ike Ulmer et ux., as owners of the 268 acres of land, in favor of Mrs. J. A. Lyon, as beneficiary, but which was not filed for record until December 18, 1939, and the heirs at law and devisees of A. J. Broderick and George Calvert, respectively, who claim under a mineral deed from the said Ike Ulmer et ux.

Then too, Kirby Petroleum Company asserts its claim to a 40-268 interest in the said minerals by virtue of a mineral deed to it from the said Ray Walker, but the said

company recognizes, and correctly so, that its rights thereto are "subject to any valid and subsisting oil, gas and mineral lease" on said lands, and therefore makes no adverse claim to that of the appellant Gulf Refining Company, and its rights to the said interest is not contested by any of the other parties to either of these controversies, and no complaint is made here in regard thereto.

The first question then is whether or not the Gulf Refining Company was entitled under its bill of complaint and the proof to have its lease from George Taylor to the undivided three-fourths interest in the oil, gas and other minerals under the 268 acres of land confirmed and quieted as against the above-mentioned appellees to the controversy in regard thereto, who claim one-half of the said three-fourths interest, free of the said lease. Those appellees contend, and the trial court so found, that the conveyance from the said George Taylor to Ray Walker of October 11, 1943, has priority over the lease executed by the said George Taylor on October 8, 1943, in favor of the appellant Gulf Refining Company, on the ground that Ray Walker had neither actual nor constructive notice of the lease of the said appellant at the time he obtained and recorded his conveyance from the said Taylor. The appellee Wallace Harrison, and the other appellees to this particular controversy, all claim through the said Ray Walker, as heretofore stated.

The conveyance executed by Taylor to Walker on October 11, 1943, is on Form R-101, known as a "Mineral Right and Royalty Transfer." Taylor thereby conveyed to Walker for a consideration of $500, and other good and valuable considerations, one-half of the three-fourths undivided interest in the minerals which the said Taylor had theretofore acquired from Ike Ulmer, et ux.; and had leased to the appellant on October 8, 1943; and this conveyance contains a provision reading as follows: "This conveyance is made subject to any valid and subsisting oil, gas or other mineral *lease or leases* on said land, . . but, for the same consideration hereinabove mentioned,

grantor has sold, transferred, assigned and conveyed and by these presents does sell, transfer, assign and convey unto grantee, his heirs, successors and assigns, the same undivided interest (as the undivided interest hereinabove conveyed in the oil, gas and other minerals in said land) in all the rights, rentals, royalties and other benefits accruing or to accrue under *said lease or leases* from the above described land; . . . " (Italics ours.)

This form of conveyance was selected and agreed upon when the same was executed at a conference between Taylor and his attorney, his grantee Walker, and his brother, both of whom are attorneys, and they either knew, or should have known, as investors in mineral rights that the same was being used to limit or qualify the warranty of title given by Taylor to the mineral interest therein conveyed. And, if we should hold that the above-quoted provision did not have the effect of doing so, we would not be construing the same, but rather we would be expunging it, and this we are not authorized to do under the well-established principles of law for the construction of contracts and the requirements that all of the valid provisions thereof shall be given some effect, unless meaningless. Dunn v. Stratton, 160 Miss. 1, 133 So. 140; Southern Ry. Co. v. Anderson, 158 Miss. 543, 130 So. 743; Shapleigh Hardware Co. v. Spiro, 141 Miss. 38, 106 So. 209, 44 A. L. R. 393; Harris v. Townsend, 101 Miss. 590, 58 So. 529; 12 Am. Jur. 774; 16 Am. Jur. 534. Moreover, the presumption is that the grantor Taylor did not intend to unqualifiedly warrant unto Walker that which he had conveyed by lease to the appellant Gulf Refining Company three days prior thereto for a substantial cash consideration. It is not to be presumed that this qualification of the warranty was used for that purpose.

Moreover, on November 30, 1943, Walker made conveyances for fractional interests in these minerals to his various vendees and used this same form of conveyance.

In the case of Cummings v. Midstates Oil Corporation, 193 Miss. 675, 9 So. (2d) 648, 651, this Court held a conveyance "subject to any valid and subsisting oil, gas or

other mineral lease or leases on said land," etc. (Form R-101) made by Cummings to Lutz to be subject to a prior existing lease to Pendleton, stating: "The only existing lease on the lands was the Pendleton lease. . . Therefore, while the Pendleton lease is not expressly described in the Lutz conveyance, the reference therein to existing lease could mean only the Pendleton lease."

It is true that the Pendleton lease was then of record, but there is nothing to prevent parties from using this form to protect the grantor on his warranty as' against any outstanding lease. It is a matter of contract. And, in the Cummings case, the Court on its own motion, took notice that Form R-101 was generally used in this State, to denote that a mineral transfer is subject to an existing lease.

This form for conveyance of rents and royalties under an existing lease together with a proportionate interest in the minerals in fee upon the expiration of the existing lease has been approved not only by Summers, in his work on Oil and Gas, Section 1466 et seq. (except that his form is drawn for a term of years), but also by such eminent text-writers as Glassmire in his Law of Oil & Gas Leases & Royalties, page 410; Mills and Willingham in their Law of Oil & Gas, page 648, Nos. 18 and 19; Nichols in his Encyclopedia of Legal Forms; 7th Ed., page 46, Sec. 7.213 and page 103, Sections 7.344 and 7.347; and Thornton in his Oil & Gas, Section 3113.

However, it is contended by the said appellees (1) that the lease of the appellant Gulf Refining Company, of October 8, 1943, was not a valid and subsisting lease on the 11th day of October, 1943; (2) that if it was, then that on account of the said lease not being then of record the above-quoted provision in the conveyance from Taylor to Walker is ineffectual to bind the grantee therein since it fails to identify any particular lease to which it was made subject; and (3) that the grantee Walker had neither actual nor constructive notice of the said lease, same not having been filed for record and recorded on or prior to

the execution and recordation of this conveyance from Taylor on October 11, 1943.

But, in view of the quoted stipulation in this conveyance from Taylor to Walker, we deem it unnecessary to discuss the facts relating to the contention last mentioned as to whether or not Walker had actual notice of the appellant's lease from Taylor when Walker obtained his conveyance from Taylor on October 11, 1943, for the reason that if the appellant's lease of October 8, 1943, was valid and subsisting on the said October 11, 1943, contrary to the contention first above stated, the rights of the appellees are, as a matter of contract, subordinate to the said lease of the appellant, unless the second contention is sound.

The proof discloses without dispute that on October 8, 1943, when George Taylor, the common source of title of the said appellant and the appellees, was the owner of the three-fourths undivided interest in the minerals under the said 268 acres of land, he executed and delivered to G. D. Bilberry, a representative of the Gulf Refining Company, the lease in favor of said company covering the said entire interest; that he was then paid therefor the sum of $1,005, on a $5 an acre basis, covering the entire 268 acres, by a draft for the said amount, and that this draft was deposited by Taylor and credited to his account at a local bank in Laurel on October 9, 1943; that Bilberry returned to Jackson with the lease, and forwarded the same on the next day to the Shreveport office of the appellant Gulf Refining Company; that on October 12, 1943, the Shreveport office discovered that 11 acres of the 268 had been inadvertently omitted from the lease; that this lease described the lands as being "all in Section 27, Township 1 North, Range 12 East," in which the 11 acres was located, and it contained the following provision: "This lease covers all the land, or interest, in the above section, township and range, whether correctly described herein or not," and the lease stated that all the land covered thereby was estimated to comprise 268 acres.

The proof further discloses that the omitted 11 acres were necessary to constitute the 268 acres, purchased by the draft of $1,005 at the rate of $5 per acre; that upon the discovery of the error, the lessee retained possession and control of this original lease until a corrected one was executed on October 18, 1943, by Taylor in its favor, and until the correcting lease had been received by Bilberry as a correction of the original lease of October 8, 1943; that in the meantime the draft for the $1,005 was paid in due course on October 13, 1943, by the appellant upon its receipt by a bank at Shreveport, upon the well founded assumption that Taylor would of course execute the corrected lease when presented to him so as to cover the entire acreage for which he was then being paid; and that when the correcting lease was forwarded to Bilberry at Jackson, he thereupon returned the original lease to Taylor's attorney.

It is contended by the appellees, however, that the lease of October 8, 1943, was never accepted by the appellant Gulf Refining Company, but was returned to the lessor Taylor because of its incorrectness. However, as heretofore shown, possession and control of this original lease was not relinquished until the correcting lease was received in exchange for its return. In the meantime, the lessee was entitled to have the correction made so as to specifically mention the omitted 11 acres in view of the provision in the original lease that it should cover all the land, in the section, township and range therein mentioned. It was a good and valid lease of the three-fourths undivided interest in the minerals thus located and owned by the lessor from the date of its execution and delivery on October 8, 1943, to the representative of the appellant. The correcting lease of October 18, 1943, called for no additional consideration, nor any change in the maturity dates or amounts of the annual rentals of $1 per acre to be paid therefor. We think there was a sufficient delivery and acceptance of the original lease pending the execution of the correcting lease containing the better

description. The lessee did not stop payment on its draft given in payment of the purchase price of the original lease but paid the same in due course and prior to the execution of the correcting lease.

Therefore, we are of the opinion that the finding of the chancellor when he held that the appellant Gulf Refining Company held a valid and subsisting lease on an undivided three-fourths interest in the said minerals under the entire 268 acres from October 8, 1943, is amply supported, both by the foregoing facts and the law applicable thereto.

The Mineral Right and Royalty Transfer, executed on October 11, 1943, by the said Taylor in favor of Ray Walker was therefore made subject to the lease of October 8, 1943, since it was by its express terms made "subject to any valid and subsisting oil, gas and other mineral lease or leases on said land." And, it will be noted that the provision in question does not make the conveyance from Taylor to Walker subject to any valid and subsisting lease, or leases, *of record*, but to *any* such valid and subsisting lease, or leases. Moreover, there is expressly granted unto the said Walker by his grantor Taylor a one-half undivided interest in "all the rights, rentals, royalties and other benefits accrued or to accrue *under said lease or leases*" (italics ours) from the land described therein. The lease of October 8, 1943, in favor of the appellant was the only valid and subsisting lease then outstanding against said land. And, while this lease is not mentioned in particular, this Court held, as hereinbefore stated, in Cummings v. Midstate Oil Corporation, supra, that where a conveyance was made "subject to any valid and subsisting oil, gas or other mineral lease or leases" as made by Cummings to Lutz, the same was subject to prior existing lease to Pendleton, not specifically mentioned in the conveyance.

Moreover, the grantee Walker would not be entitled to accept a conveyance which conveys to him "all the rights, rentals, royalties and other benefits accruing or to accrue" under a valid and subsisting oil, gas or other mineral

lease, or leases, and then reject that portion of his deed which expressly makes it subject to any such lease. He must reject this provision in its entirety or recognize and ratify it entirely. In other words, appellees may not be allowed to renounce the words contained in the deed from Taylor to Walker whereby royalties and delay rentals were conveyed and at the same time to hold on to the deed in so far as it conveyed minerals under the land. Commercial Bank of Manchester v. Lewis, 13 Smedes & M. 226; Jennings v. Gage et al., 13 Ill. 610, 612, 56 Am. Dec. 476; Washington v. Soria, 73 Miss. 665, 19 So. 485, 55 Am. St. Rep. 555; Masonic Benefit Ass'n of Stringer Grand Lodge v. First State Bank, 99 Miss. 610, 55 So. 408; Prince v. Prince, 190 Miss. 309, 200 So. 126; 31 C. J. S., Estoppel, Sec. 37, et seq., p. 213; and 19 Am. Jur. 619, sec. 21.

We are of the opinion that the registry statutes, Sections 867, 868, 869, Code 1942, are inapplicable where a grantee accepts a conveyance which is expressly made subject to any valid and subsisting lease, or leases, and which obligates the grantor to permit him to receive one-half of the rights, rentals, royalties and other benefits accruing, or to accure, under said lease, or leases, in addition to the mineral interest conveyed; and that therefore the trial court was in error in declining to quiet and confirm the title of the appellant Gulf Refining Company to its lease of the three-fourths undivided interest in the oil, gas and other minerals in question, on the ground that the proof as to the actual notice on the part of Walker as to said lease did not meet the burden which the court held was resting upon the complainant, and the sufficiency of which proof we deem unnecessary to discuss. That is to say, the court was, in our opinion, in in error in subordinating the rights claimed by the said appellant to those claimed by the appellees therein, by eliminating the meaning and effect of the provision contained in the conveyance from Taylor to Walker, and that contained in the subsequent conveyances from

Walker to the other appellees, respectively, which made them subject to any valid and subsisting lease, and which also granted to all of the said appellees rights and benefits under such lease.

As to the second controversy mentioned in the first paragraph of this opinion, the appellants, American Liberty Oil Company, Blue Bird Investment Company and G. G. Stanford, claim their one-fourth undivided mineral interest in only 228 acres of the 268 acres of land involved in the lease of the Gulf Refining Company, hereinbefore discussed, through a foreclosure of a deed of trust given by the owners of the said land, Ike Ulmer et ux., on August 4, 1939, to M. G. Travis, trustee, in favor of Mrs. J. A. Lyon, since there was omitted from the said deed of trust, notice of sale and trustee's deed, one 40 acre tract in the said 268 acres. The appellees, who are the heirs and devisees, respectively, of A. J. Broderick and George Calvert, claim an undivided one-fourth of the minerals under the entire 268 acres by virtue of a mineral conveyance to the said Broderick and Calvert on December 16, 1939, from the said Ike Ulmer et ux.

The deed of trust above mentioned was not filed for record until December 18, 1939, two days after the mineral conveyance was made to the said Broderick and Calvert, but the same was filed for record two days prior to the filing of the said mineral conveyance, on December 20, 1939. Therefore, under the provisions of Sections 867, 868, 869, Code 1942, the deed of trust had priority over the said mineral conveyance. Owens v. Potts, 149 Miss. 205, 115 So. 336. But, it is urged by the said appellees that the foreclosure of the said deed of trust, through which these appellants claim, was a void foreclosure; and in response to a motion for a bill of particulars in that behalf (and the writer of this opinion is not responsible for its being so long, and neither are the litigants), they say, as cross-defendants to the answer and cross-bill of these appellants, that the trustee's deed states on its face that the land was offered for sale by forties, and

then as a whole, contrary to the requirements of Section 111 of the State Constitution, and of Section 2167, Code 1930 (in force when the foreclosure was held); (2) and that the advertising of the sale was confusing in that a copy of the notice thereof was posted at each of the courthouses of the two separate judicial districts of the county; (3) that the publication of the notice was made only in a newspaper published in the second district, whereas the land was situated in the first district, where the sale was made; (4) that the notice of sale specified that the same would be made at the south door of the courthouse, when there was no south door thereof; and (5) that the deed of trust, trustee's deed and the notice of sale, did not contain a sufficient description of 11 acres of the land, and that there was omitted therefrom 40 acres belonging to the mortgagors; and that therefore the deed of trust should have been foreclosed in chancery.

Responding to the first four grounds of the alleged invalidity of the sale, we deem it sufficient to say that, in our opinion, the manner of offering the land for sale did not violate either the constitution or the statute; that there could be no valid objection to posting notices of the sale at as many places in the county as the trustee should desire; that since there was no newspaper published in the first district, it was both legal and proper to publish the same in a newspaper published in the second district which had a general circulation over the county, as disclosed by the proof; and that the advertisement of the sale to be made at the "south door of the courthouse," when there was no south door thereof, was neither insufficient nor misleading inasmuch as there was a southeast door, at which public sales were usually held, and at which this one was made. The courthouse had only a front and a back door, and a prospective bidder in search of the south door would have had no difficulty in finding or being directed to the southeast door where the sale was being conducted.

As to the fifth ground of the alleged invalidity of this foreclosure sale, there is presented some difficulty, but we are of the opinion that the effect of the foreclosure sale was to convey to the purchaser the land actually owned by the grantors in the deed of trust in the governmental subdivisions therein described.

The land owned by the grantors at the time of the execution of the deed of trust is as follows: ''Southeast Quarter (SE¼) less 2 acres in SE corner; 19 acres on East side of Northeast quarter of Northwest Quarter (NE¼ of NW¼); 11 acres on East side of Southwest Quarter of Northwest Quarter (SW¼ of NW¼); Southeast Quarter of Northwest Quarter (SE¼ of NW¼), and Southwest Quarter of Northeast Quarter (SW¼ of NE¼), all in Section 27, Township 1 North, Range 12 East.'' (In Jasper County, Mississippi.)

The land was thus described in the mineral conveyance of said Ike Ulmer et ux. in favor of Broderick and Calvert, but in the deed of trust, notice of sale and the trustee's deed the same was described as follows: ''SE¼ of NW¼, and 19 acres on the East side of the NE¼ of NW¼, 11 acres in the SW¼ of NW¼, and the SW¼ of NW¼, Section 27, and SE¼ less 2 acres in Section 27, all in Township 1, Range 12, Jasper County, Mississippi.''

It will thus be seen that there was omitted from the deed of trust, notice of sale and trustee's deed the SW¼ of the NE¼ of said Section 27; that the ''11 acres in the SW¼ of the NW¼'' is not located by this description, but it will be further observed that the trustee then offered and sold the whole of the said SW¼ of the NW¼, which, less 11 acres, was owned by J. M. Travis, an attorney who conducted the sale for the trustee, M. G. Travis; and that the description ''SE¼, less 2 acres in Section 27'' would be void only as to the excepted two acres, under the decision of McAllister v. Honea, 71 Miss. 256, 14 So. 264, and other and more recent cases decided by this Court.

As to the omission of the SW¼ of the NE¼ of said Section 27 owned by the grantors in the deed of trust, neither they nor the beneficiary can complain, since, in the first place, the grantors were not required to encumber all of their land, and in the second place, the beneficiary bid the full amount of her debt in purchasing the land described and sold. And, as to the "11 acres in the SW¼ of the NW¼," the location of which 11 acres is indefinite, we are of opinion that since there was then offered the entire SW¼ of the NW¼ the sale served to divest the mortgagors, and to vest in the purchaser at the foreclosure sale, title to whatever 11 acres they may have owned in the said 40 acres. This indefinite description did not, therefore, render the sale void, but did leave the purchaser vested with the rights as between herself and the owner of the remainder of the said 40 acres to have its location determined according to the description in the chain of title to the respective parts thereof.

We are, therefore, of the opinion that the trial court was in error in holding that this foreclosure sale was *void*, and in dismissing the cross-bill of these appellants as to their one-fourth undivided interest in the minerals under the said 228 acres involved in the foreclosure sale, through which they claim; and that therefore the court was in error in not adjudging that these appellants American Liberty Bell Company et al. were the owners of the said mineral interest in this 228 acres as against the claims of the heirs and devisees of the said Broderick and Calvert, and in not holding that the rights claimed by the said appellees were enforceable only as to the said SW¼ of the NE¼ of said Section 27, not involved in the foreclosure proceedings.

We have considered the numerous cases cited pro and con on the issues involved in both of the controversies herein decided, and we find that none of the cases held contrary to the views here announced in the light of the facts of this case. It would serve no useful purpose to

review and discuss the numerous cases relied upon by the respective litigants.

The decree of the trial court must therefore be reversed and decree rendered here in favor of the priority of the lease of the appellant Gulf Refining Company, and confirming and quieting its title to the interest therein conveyed, as prayed for, and reversed and decree rendered here in favor of the appellants American Liberty Oil Company, Blue Bird Investment Company and G. G. Stanford as to the mineral interest claimed by them in the 228 acres involved in the foreclosure sale; and affirmed in all other respects wherein the decree appealed from is not inconsistent with the rights herein adjudged in favor of all of the said appellants.

Reversed in part, affirmed in part, and judgment here accordingly.

**Roberds, J.,** delivered the opinion of the court on suggestion of error.

We have given careful consideration to the contentions in both suggestions of error herein, but we find nothing therein requiring a different conclusion from that reached in our original opinion.

However, the suggestion of error on behalf of the Broderick-Calvert heirs and devisees urges that Ulmer owned, and that the mineral rights conveyance from him to Broderick and Calvert described, "Nineteen acres on East side of Tallahatta Creek . . . " in the east side of the NE¼ of NW¼, Section 27; that Tallahatta Creek runs in a northeasterly and southwesterly direction and that the description of the nineteen acres in the Lyon trust deed as "19 acres on the east side of the NE¼ of the NW¼" necessarily failed to include some 5 to 6 acres of land in the form of a triangle lying outside and west of the description in the Lyon trust deed but within the description in the Broderick-Calvert conveyance, from which it is contended that the claim of these heirs

and devisees is necessarily superior to that of persons claiming through the foreclosure of the Lyon trust deed. In the original opinion we ordered rendition of a decree in favor of Lyon trust deed vendees " . . . to the mineral interest claimed by them in the 228 acres involved in the foreclosure sale." We did not understand they were claiming any land without the calls of the Lyon trust deed. The rights of the parties to the triangular strip as now raised was not presented or adjudicated in that proceeding.

Suggestions of error overruled.

**McGehee, J.,** delivered a separate concurring opinion.

In addition to what is being said in the opinion of Justice Roberds overruling this suggestion of error, I desire to state that in my judgment the decree of the trial court on the issues involved as between the Gulf Refining Company and Wallace Harrison and others was erroneous, and should have been reversed for the further reason that the testimony showed almost conclusively that the vendor of Wallace Harrison and his co-defendants had actual notice of the existence of the Gulf Refining Company's lease at the time such vendor acquired his interest in the minerals in question.