Ralph W. CREWS and Beryle C. Crews, husband and wife, Plaintiffs in Error,

v.

John Patrick BURKE; Mary H. Burke; Joseph Burke; Lawrence Burke;

The unknown heirs, executors, administrators, devisees, trustees and assigns of Margaret M. Burke, Deceased;

Champlin Refining Company, a corporation;

and

Northern Oklahoma Gas Company, a corporation, Defendants in Error.

No. 37331.

Supreme Court of Oklahoma.

March 5, 1957.

Rehearing Denied April 2, 1957.

M. F. Priebe, Simons, Simons, Mitchell, Headrick & Mitchell, Enid, for plaintiffs in error.

I. D. Ross and David Ross, of Ross & Ross, Newkirk, for defendants in error.

BLACKBIRD, Justice.

This appeal involves the distribution of the proceeds of oil and gas production on a 240-acre tract of land in Kay County.

Plaintiffs in error, hereinafter referred to as plaintiffs, were originally the owners of the entire fee in said tract. Before the land was leased for oil and gas exploration, plaintiffs, as grantors, executed and delivered to John Patrick Burke and his wife, Margaret M. Burke, as grantees, an instrument of conveyance entitled "Sale Of Oil And Gas Royalty." Said instrument provided, among other things, that "no part" of future oil and gas lease bonuses or rentals should be owned by the grantees; but it also purported to grant them the right of ingress and egress for oil and gas drilling purposes.

Champlin Refining Company leased said land for such purposes from plaintiffs on May 5, 1950, and thereafter required Mr. and Mrs. Burke to execute a written ratification of the lease under date of November 13, 1952.

Mrs. Burke died in 1953, and her interest was inherited equally by defendants in error, who are her surviving husband, two sons, and a daughter, hereafter referred to as defendants.

After discovery of oil and gas on the land a dispute arose between the plaintiffs and defendants as to what proportionate part of the proceeds thereof each was entitled.

'Thereupon, the ordinary landowners' ⅛th part thereof was impounded, until the issue could be resolved by court action.

In instituting the quiet title action, out of which this appeal arose, plaintiffs took the position that, by the above-mentioned "Sale Of Oil And Gas Royalty", they conveyed to Mr. and Mrs. Burke only an undivided ⅟₁₆th interest in the minerals under said land for a specified term; and, that consequently they are entitled to ¹⁵⁄₁₆ths of the impounded funds, while defendants are entitled to only ⅟₁₆th thereof. Defendants, on the other hand, contended that, by said conveyance, they acquired, for the term specified therein, an undivided ⅟₁₆th of the full ⅞ths of the minerals under said land; and consequently they are entitled to ½ of the ⅛th impounded production proceeds.

At the trial, the parties, by stipulation, submitted the cause to the court without introduction of any evidence, except the conveyance and lease-ratification instruments hereinbefore referred to. The "Sale Of Oil And Gas Royalty" is in words and figures as follows:

"Know All Men by These Presents, That Ralph W. Crews and Beryl C. Crews, husband and wife at all times since acquiring the hereinafter described property, of Kay County, State of Oklahoma for and in consideration of the sum of Ten and more  -  -  - Dollars ($10. & more) cash in hand paid by Margaret M. Burke and John Patrick Burke hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said Grantee an undivided One sixteenth (⅟₁₆th) interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in Kay County, State of Oklahoma to-wit:

The East Half of the Southwest Quarter and the Southeast Quarter of . . . of Section 31 Township 25 N

Range 2 West containing 240 acres more or less, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom, with the right at any time to remove any or all equipment in connection therewith.

"~~Said land being now under an oil and gas lease executed in favor of~~ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . it is understood and agreed that this sale is made subject to the terms of said lease insofar as it covers the land described above, but covers and includes one sixteenth (⅟₁₆th) of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in the event that the above described lease for any reason becomes cancelled or forfeited then in that event an undivided no part of the lease interests and all future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by the Grantee owning one sixteenth (⅟₁₆th) of all oil, gas and other minerals in and under said lands.

"To Have and to Hold the above described property, together with all and singular the rights, appurtenances thereto in anywise belonging unto said Grantee, herein, their heirs and assigns for a terms of fifteen years from July 3, 1946 and as long thereafter as oil and/or gas is produced from these premises or the property is being developed or operated for oil, gas or other minerals and they do hereby bind themselves & their heirs, executors and administrators to warrant and forever defend all and singular the said property unto said Grantee herein their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, and agree that the Grantee shall have

the right at any time to redeem for Grantors by payment, any mortgage, taxes or other liens on the above described lands, in the event of default of payment by Grantors, and be subrogated to the rights of the holder thereof.

"Witness our hands this 3rd day of July, 1946."

(Omitting signatures and acknowledgment.)

In its judgment, the trial court found the issues in favor of defendants, decreeing specifically that, under the above-quoted conveyance, they own collectively a ⅟₁₆th of the total production of said land for a period of 15 years from July 3, 1946, and so long thereafter as oil and gas, or either of them, is produced therefrom or it is being developed or operated for oil, gas or other minerals. In said judgment, the court, by specifically finding that it was "mere surplusage", made it plain that, in construing said instrument, he wholly disregarded the portion thereof which reads as follows:

"* * * It is understood and agreed that this sale is made subject to the terms of said lease insofar as it covers the land described above, but covers and includes one sixteenth (⅟₁₆th) of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease."

In urging reversal of said judgment in the present appeal, plaintiffs contend that the trial court's interpretation of the above-quoted instrument is erroneous and clearly contrary to the intention of the parties as expressed therein. They argue that when the import of said instrument is gathered from its four corners, and upon consideration of all of its provisions, including the last above quoted one, which they say the trial judge erred in disregarding, it is obvious that its purpose was to convey to Mr. and Mrs. Burke only a ⅟₁₆th interest in the ⅛th, or "landowners' royalty" portion of the minerals under said land, rather than a ⅟₁₆th part of all production therefrom. On the other hand, defendants contend that since there was no oil and gas lease on the land at the time said conveyance was executed, the trial judge was correct in disregarding the disputed provision; and that, when this is done it is clear that, under the previous decisions of this court, the instrument conveyed a ⅟₁₆th interest in the entire mineral production of the land for the term specified therein.

█ The fact that the instrument evidencing plaintiffs' conveyance to the Burkes was denominated sale of "Royalty", rather than a mineral deed, is not of controlling importance. See Colonial Royalties Company v. Keener, Okl., 266 P.2d 467, 468, and the authorities therein cited. In our opinion, the body of the instrument shows conclusively that the true nature of the transaction was a conveyance of minerals, rather than of "production", or royalty within the strict meaning of that term. In the cited case, we held:

"The intention of the parties to a conveyance of mineral rights must be deduced from the provisions thereof considered as a whole, and every provision must be construed, if possible, so as to be consistent with every other provision and to give effect to all such provisions."

Under the modern rule, more or less consistently followed by this court since its specific adoption in Breidenthal v. Grooms, 161 Okl. 74, 17 P.2d 688, and reiteration in Westcott v. Bozarth, 202 Okl. 149, 211 P.2d 258, the granting clause of the instrument in question strongly indicating that the conveyance involved was a mineral grant (as distinguished from a sale of royalty or production) may not be controlling. See the Colonial Royalties Company case, supra. Examples of this are seen in Elliott v. Berry, 206 Okl. 594, 245 P.2d 726; Fry v. Smith, 205 Okl. 222, 236 P.2d 699, and Armstrong v. McCracken, 204 Okl. 319, 229 P.2d 590, in which the language in said clause, when considered in the light of, and as modified and explained by, other provisions in the conveyances involved, was found to constitute grants, or reserva-

tions, different from the ordinary mineral grant or reservation. The instrument involved here is like those to the extent that here, also, we have explanatory language in another part of the instrument, which, in our opinion, leaves no doubt as to the intention of the parties. That language is as follows:

"it is understood and agreed that this sale covers and includes one-sixteenth (⅟₁₆th) of all the oil royalty, and gas rental for royalty due *and to be paid* under the terms of said lease." (Emphasis ours.)

The trial court erred if he regarded the quoted language as wholly without significance merely because no oil and gas lease on the land then existed. We think the parties knew and recognized that the land was unleased as evidenced by the *obvious deletion, by typing over it,* of the initial portion of the following sentence: "Said land being now under an oil and gas lease executed in favor of . . .". The fact that the first above-quoted portion of said sentence was *not deleted,* and was made effective and applicable by filling in the blank space thereof with "one-sixteenth (⅟₁₆th)" indicates to us that this was the parties' method of describing specifically just what portion of the production, under an oil and gas lease (in the event one was entered into) was to be paid the grantees.

■ In this view of the instrument, there is no inconsistency or repugnance between the words of the granting clause and those found elsewhere in the instrument. The fact that the grantees were therein given the right of ingress and egress is not necessarily repugnant to a subsequent provision of the lease giving them "no part . . . of the lease interests and of future rentals and bonuses . . .". This provision merely meant that the grantees might go upon the land for the purpose of drilling themselves, but had no right to participate in bonuses and rentals paid by others for this privilege; and the word "rentals" as here used means delay rentals, as distin-

guished from the term "gas rental" used in the first explanatory or "understood and agreed" provision preceding it. Said provision rendered the mineral grant a "non-participating" one, as distinguished from a "participating" one; and that is the only significance of the use of the term "lease interests" in the "no part" provision. In this connection see Fry v. Smith, supra, [205 Okl. 222, 236 P.2d 700] in which the conveyance from Weston F. Fry to F. C. White also provided that said grantee, or "second party", should have "no interest in the leasing of said premises"; but it also granted him a " 'one-sixteenth of *all* the oil and gas *beneath the surface of the ground * * *' "; and also specified " '* * * which oil and gas may be produced hereafter from said tract of land by any party or parties whomsoever, and the oil and gas delivered to his credit in the pipe line connected by him to the wells, *free of cost * * *' "*. (Emphasis ours.) There we said that had it not been for the cited provisions, Swearingen v. Oldham, 195 Okl. 532, 159 P.2d 247, and *other cited cases to the same effect,* "might apply, but they cannot * * * in [the] face of such plain language * * *".

■ In accord with the foregoing, it is our opinion that when the grantees in the conveyance, under which defendants derive their title, accepted same with the provision therein specifically spelling out the fraction of the production from the land therein described, to which they would be entitled under an oil and gas lease on the premises and later ratified, by a written instrument in which they recognized "as though" they "had personally signed, executed and acknowledged the same" an oil and gas lease which provided for the lessor's payment of a ⅛th royalty to the owners of the minerals under said land, they specifically agreed to accept a ⅟₁₆th part of said ⅛th as their share of the oil and gas produced from said land under such a lease. It follows therefore that the trial court's judgment decreeing them to be the owners, collectively, of a ⅟₁₆th interest in "all" of the oil and gas produced from said land

**296**

was error. Said judgment is accordingly reversed with instructions to the trial court to vacate it and enter judgment quieting title in plaintiff, except as to the 1/16th mineral interest previously conveyed to defendants.