210 So.2d 629 (1968)
James W. HARRIS et al.
v.
B.C. GRIFFITH et al.
No. 44810.
Supreme Court of Mississippi.
May 20, 1968.
Rehearing Denied June 10, 1968.
*630 Morse & Morse, Jackson, John K. Keyes Collins, for appellants.
Dale & Wilson, Prentiss, Cox, Dunn & Clark, Jackson, for appellees.
ETHRIDGE, Chief Justice.
This case involves the mineral-royalty distinction, and principally the question of whether a 1944 deed from Carl F. Griffith and wife to Thomas O. Payne conveyed a mineral interest including the executive right to lease, or simply a nonparticipating royalty. The Chancery Court of Jefferson Davis County held that it was a conveyance of a non-participating royalty, without the leasing right. We affirm.
B.C. Griffith and seven others, appellees, were complainants in chancery court. The defendants-appellants are James W. Harris, Ann Lacy Crain, and Patsy Lacy Griffith. The bill of complaint sought to cancel as a cloud on complainants' title an oil, gas and mineral lease, dated January 2, 1960, by defendants Ann Lacy Crain and Patsy Lacy Griffith to James W. Harris. It was acknowledged on July 6, 1966, and filed for record two days later. Crain and Patsy Griffith claim through Payne, grantee in the 1944 deed from Carl F. Griffith and wife. The bill of complaint alleged that this deed did not convey the executive right, but only a non-participating royalty.
Defendants' answer asserted that they owned an undivided 1/8 interest in the minerals, flowing from the 1944 deed to Payne, together with the leasing rights, and that the deed to Payne conveyed a 1/4 mineral interest with the right to lease. They filed a cross-bill, and asked for an accounting from cross-defendants of their share of the production.

I.

THE CHAIN OF TITLE, THE MINERAL DEED IN QUESTION, AND THE FACTS
On July 8, 1937, Carl F. Griffith executed an oil, gas and mineral lease to Vaughan, who assigned it to Sun Oil Company. There was later production from this lease, and it remained in effect until 1959.
On November 21, 1944, Carl F. Griffith and wife executed a deed to B.C. Griffith (correcting one of July 24, 1944) conveying to him a 1/32 royalty, "64 and 3/4ths full royalty acres."
On August 11, 1944, Carl F. Griffith and wife executed the deed in question in this suit. It was properly acknowledged and filed for record on August 24, 1944. At this time Carl F. Griffith was a farmer with a ninth grade education. Payne was an experienced oil and gas operator and investor. The deed is as follows:
*631 
*632 On November 13, 1944, Payne conveyed to Cockburn a 1/8 mineral interest on a Form R-101, without any revisions.
On February 27, 1945, Payne executed a deed of trust to a trustee for Rogers Lacy, beneficiary, in which he stated his intention to convey 1/2 of the interest in the minerals conveyed to him by Carl F. Griffith and wife by the 1944 deed, with the intention of grantor to "convey 32 3/8 full mineral acres of said lands, the same being non-participating as to bonus and lease rentals."
On March 13, 1947, Cockburn conveyed to Rogers Lacy of Longview, Texas, a 1/8 mineral interest. Appellants claim through Lacy.
On November 14, 1947, Payne executed a deed of trust to a trustee for a bank, covering his undivided 1/64 royalty interest in the minerals in the stated lands.
On June 21, 1949, Payne executed a non-participating royalty deed to Peterson, which included the following statement:
It is the intention of the grantor to convey 32 3/8 full royalty acres in said land and being the same interest conveyed in trust in the same lands as described in the Deed of Trust executed by Thomas O. Payne to S.W. Breeding, Trustee, Rogers Lacy, Beneficiary of record in Book 130, page 440, Oil and Gas Records of Jefferson Davis County, Mississippi.
In 1945, Sun Oil Company secured gas production on a unit which included the subject property. Sun Oil Company paid a 1/64 royalty attributable to its production from said land to the Rogers Lacy interest. In 1959, after cessation of commercial production under the Sun lease, Carl F. Griffith sought a release from Sun of its lease, and finally employed attorneys for that purpose. The defendants contributed nothing toward getting this release, and did not assert a claim that they owned anything other than a royalty. Griffith paid forty per cent of his mineral estate as an attorney's fee to secure the cancellation of the Sun lease.
In 1960 Gulf Oil Corporation and other operators, including appellees B.C. Griffith and M.M. McGowan, completed a deep gas well on Gwinville Unit No. 105, which embraced the subject property and other lands. On December 8, 1959, complainants McGowan and B.C. Griffith executed Gulf's Operating Agreement, and paid Gulf all billings to them for drilling and development costs of the Carl F. Griffith tract in Unit No. 105. Gulf's No. 105 well produced poorly, so Gulf terminated its operations, and in 1963 Jack E. Stack, Jr., became the operator. Subsequently, production was increased considerably, and the well became a paying venture. When Stack took over operation of the well, it was $472,772.00 in debt. At that time complainants had paid to Gulf expense payments of $34,479.30, attributable to the 1/8 interest in the Carl Griffith land. Complainants McGowan and Howie acted as operators of the Griffith tract included in Unit No. 105, and payments of revenue for minerals taken from that tract (except for the Stack interest) were made to them. Defendants Crain and Griffith declined to sign a division order, which reflected that they were the owners of 1/8 of the 1/8 royalty attributable to the Griffith land. The money assigned to this asserted royalty interest has been placed in an escrow account, and complainants admit that Crain and Griffith are entitled to it. McGowan pleaded that he was willing and able to disburse such funds to Crain and Griffith upon receipt of a properly executed division order.
After drilling and completion costs were more than offset by production income, in July 1966, an oil and gas lease dated 1960 to James W. Harris was acknowledged by Mesdames Crain and Griffith and filed for record. It provided for an overriding royalty to lessors. No cash bonus money was paid them.
On the theory that the deed was ambiguous, complainants introduced extrinsic evidence *633 to show various alleged circumstances, including conversations, surrounding the execution of the Griffith-Payne deed.
The chancery court held that, considering the instrument as an entirety, it was the intention of the parties to convey to Payne a non-participating royalty. Alternatively, if the instrument is ambiguous, the trial court stated that, in view of the extrinsic evidence, the general situation of the parties, and the practical construction by them, the deed conveyed only a non-participating royalty. Hence the chancery court ordered cancellation of the lease from Crain and Griffith to James W. Harris, dated 1960, but acknowledged and recorded in 1966. It denied any relief on the cross-bill.

II.

EFFECT OF THE GRIFFITHPAYNE DEED
After careful consideration of the Griffith-Payne deed, we have concluded that it had the effect of conveying to Payne a nonparticipating royalty interest; and that the executive right, together with the rights to lease, bonuses and rentals, remained in the grantor. Thus we affirm the decision of the chancery court.
The parol evidence offered by appellees, as to conversations between Griffith and Payne before execution of the deed, and the inquiries of Griffith concerning the effect of the deed as changed, was not competent. Parol evidence of this nature is not ordinarily admissible in the construction of a mineral deed. Because of the need for a consistent, coherent body of law on this subject, ordinarily such instruments are regarded as unambiguous, and a construction is placed upon them that will best comport with the parties' intention appearing from the instrument itself. 1 Williams & Meyers, Oil & Gas Law §§ 219.4, 204.10, at 501 (1964).
Richardson v. Moore, 198 Miss. 741, 749-750, 22 So.2d 494, 495 (1945), outlined certain modifying principles of construction of contracts which are applicable to the present case:
In trying to solve this question, we should keep in mind certain well-established principles of construction of contracts. Those applicable here are (1) the deed must be read in the light of the circumstances surrounding the parties when it was executed; (2) that the construction should be upon the entire instrument, and each word and clause therein should be reconciled and given a meaning, if that can be reasonably done; (3) that the main document and that to which it refers must be construed together, (4) that if the wording of the deed is ambiguous, the practical construction placed thereon by the parties will have much weight in determining the meaning * * *.
To the same effect are Payne v. Campbell, 250 Miss. 227, 164 So.2d 780 (1964), and Salmen Brick & Lumber Company v. Williams, 210 Miss. 560, 50 So.2d 130 (1951).
Accordingly, the Griffith-Payne deed should be analyzed in the light of the objective circumstances surrounding the parties when it was executed. Moreover, the construction must be upon the entire instrument.
The printed form of deed which was used was a R-101, "Mineral Right and Royalty Transfer." This form has been in use in this state for a long time. It is well known that unchanged it has the effect of conveying a fractional interest in the minerals in place. See Ford v. Jones, 226 Miss. 716, 85 So.2d 215 (1956); Gulf Refining Co. v. Harrison, 201 Miss. 294, 28 So.2d 221, 30 So.2d 44, suggestion of error overruled, 201 Miss. 294, 335, 30 So.2d 807 (1947); Cummings v. Midstates Oil *634 Corp., 193 Miss. 675, 9 So.2d 648 (1942). Despite this fact, the parties used Form R-101 and made many changes, additions and deletions to it. They clearly intended to change in a substantial way the effect of the instrument. Payne, an experienced oil and gas investor, must have been well aware of the significance of the form used, and must have intended material alterations in its effect. In short, the parties were unwilling to use the regular printed form, which would have conveyed to Payne the minerals, including the executive right.
The issue is the location of the leasing right. The printed form was entitled "Mineral Right and Royalty Transfer." The parties struck out the word "Right" and inserted "Deed," thus choosing for the title "Mineral Deed and Royalty Transfer." The removal of the reference to "mineral right," and the alteration of the name of the document so that the words "deed" and "royalty" both appear in the amended title indicates an intent to convey a royalty only.
A non-participating mineral interest is in substance a royalty interest. This deed does not create a non-executive mineral interest, which is defined as the right to royalty and to either bonus or rental, or both, under existing or future leases, the owner of which has no development right and no executive right. Bonus or rental in the present deed were not conveyed. 1 Williams & Meyers, Oil and Gas Law § 301, at 441 (1964).
The second inserted intention clause states: "This instrument is to be non-participating both as to bonuses and lease rentals." This was not phrased in terms of a reservation or exception of bonuses and lease rentals. The sentence reflects an intent to define the interest conveyed as "non-participating," and then specifically states that this refers "both" to bonuses and lease rentals. The prefix, "non-participating," indicates that the "interest does not share in bonus or rental, nor in the right to execute leases or to explore and develop." Williams & Meyers, Oil and Gas Law, Index Vol., at 251 (1964). It was not stated that the deed would be non-participating "only" as to bonuses and rentals.
The printed granting clause, on its face, conveyed a 1/4 mineral estate. However, when considered along with the "non-participating" clause and the change in the title from "Mineral Right and Royalty Transfer" to "Mineral Deed and Royalty Transfer" an intent to make the interest conveyed non-participating is significantly indicated.
Moreover, the retention of bonuses and lease rentals under these circumstances justifies the implication of an intent to retain the executive right in the grantor. They are closely and materially related to the executive right. The latter may be separated, but this should be done explicitly. The potential difficulties from an opposite approach are illustrated in the instant case. Mesdames Crain and Griffith executed the purported lease on their 1/8 interest to Harris without receiving any bonus, but instead took an overriding royalty. Yet Griffith, clearly entitled under the deed to receive lease bonuses, is deprived of any such benefit under the Harris lease. This is not consistent with a duty of good faith and fair dealing by the owner of the executive right.
The last printed paragraph of the deed provides that the conveyance is subject to any subsisting oil, gas or other mineral lease. The parties to the Griffith-Payne deed struck the remainder of that paragraph. It provided:
* * * but, for the same consideration hereinabove mentioned, grantor has sold, transferred, assigned and conveyed and by these presents does sell, transfer, assign and convey unto grantee, his heirs, *635 successors and assigns, the same undivided interest (as the undivided interest hereinabove conveyed in the oil, gas and other minerals in said land) in all the rights, rentals, royalties and other benefits accruing or to accrue under said lease or leases from the above described land; to have and to hold unto grantee, his heirs, successors and assigns.
The parties were not writing on a blank sheet of paper, but on a printed form. The striking out of the above-quoted provision is meaningful as to their intent. The stricken part stated that grantors sold to grantee the same undivided interest, as the interest conveyed above, "and all the rights, rentals, royalties and other benefits accruing or to accrue under said lease. * * *" (Emphasis added.) The deletion of this quoted provision is another indication of the parties' intent, namely, that they did not propose to sell the rights, rents, royalties and other benefits under the existing lease. This tends also to confirm the suggested interpretation of the "non-participating" clause, and negate an intent to convey the executive right.
The first typed intention clause states: "It is the intention of the grantors herein to convey 64 3/4 full mineral acres." This refers, we think, to the quantity rather than the quality of the mineral estate. If it does not, then the succeeding insertion of the "non-participating" sentence is conflicting. A "full" mineral acre is one which includes all participating rights. It cannot be "full" and at the same time "non-participating." A mineral acre is the full mineral interest in one acre of land. Williams & Meyers, Oil and Gas Law, Index Vol., at 230 (1964). Since Payne's purchase was being made on an acreage basis, he apparently wanted assurance that he would receive, acre for acre, the full 64 3/4 acres, even if it later developed that Griffith owned only 250 instead of the assumed 259 acres.
The deletions in the title and the last printed paragraph may be considered in order to arrive at the true meaning and intention of the parties. They are relevant factors under the circumstances of this case and the terminology of the deed in assisting the Court to reach a reasonable interpretation of the instrument. Gibson v. Turner, 156 Tex. 289, 294 S.W.2d 781 (1956); Dwyer v. Houston Pipe Line Co., 364 S.W.2d 736 (Tex.Civ.App. 1963); 4 Williams & Meyers, Oil and Gas Law § 686.3, at 447-448 (1964).
All of these factors appearing from the face of the deed outweigh whatever significance the printed habendum clause, granting the right of ingress and egress for the purpose of drilling, might have. Westbrook v. Ball, 222 Miss. 788, 77 So.2d 274 (1955), is not contrary to our conclusion. Grantor, owning the surface and 15/16 of the minerals, conveyed the property (in effect the surface) to grantee, retained 15/16 of the minerals, and provided that grantee was to receive bonuses and rentals under any mineral leases. The reservation was clearly of a mineral estate, accompanied with the leasing right. Grantee simply received the surface and the right to bonuses and rentals.
In the instant case, the reservation of bonuses and rentals, together with the other above-discussed terms of this deed, constituted an implied retention of the executive right. Hudgins v. Lincoln Nat'l. Life Ins. Co., 144 F. Supp. 192 (E.D. 1956); McVey v. Hines, 385 P.2d 432 (Okl. 1963). See also Shepard v. John Hancock Mut. Life Ins. Co., 189 Kan. 125, 368 P.2d 19 (1962); Skelly Oil Co. v. Cities Service Oil Co., 160 Kan. 226, 160 P.2d 246 (1945); Crews v. Burke, 309 P.2d 291 (Okl. 1957); Etter v. Texaco, Inc., 371 S.W.2d 702 (Tex.Civ. App. 1963); Martin v. Snuggs, 302 S.W.2d 676 (Tex.Civ.App. 1957); Kuntz, Law of Oil and Gas § 15.7 (1962); 1 Williams & *636 Meyers, Oil and Gas Law § 304.10, at 496 (1964); Morris, Mineral Interests or Royalty Interests? Problems Created by Separation of Bonus, Delay Rental, Power to Lease and Right of Ingress and Egress, Tenth Annual Institute on Oil and Gas Law and Taxation, Southwestern Legal Foundation 259 (1959).
These characteristics of the deed on its face, when considered as an entirety, reflect an intent to convey to Payne a nonparticipating royalty, and to thus retain in the grantor a mineral estate with the executive right and accompanying benefits. Furthermore, there are several factors pertinent to the purposes and practical construction of the parties to this document which indicate an understanding of that nature. These include Payne's experience and knowledge as an oil and gas investor, Carl F. Griffith's lack of experience and education, the numerous changes in a printed document of known effect, and the timing and long period of delay by appellants before asserting any claim to the executive right. For all of these reasons, the decree of the chancery court is affirmed.
This does not adjudicate the amount of royalty due appellants, and is without prejudice to their right to obtain an adjudication thereof in another suit in the event of a disagreement concerning it.
Affirmed.
All Justices concur, except BRADY, J., who took no part.