GILLESPIE, Chief Justice,
for the Court:
This suit arose in the Chancery Court of Monroe County. Clarence C. Day and Frank R. Day appeal from that part of a decree adjudging that they had no interest in the oil, gas and mineral royalty under a tract of land. No purpose will be served by describing the voluminous pleadings and how the issue arose.
The facts insofar as necessary to present the question involved are next stated. On December 24, 1928, G. T. and Sara Roberts, owners of a tract of land in Monroe County, executed a warranty deed conveying to C. C. Day a one-half interest in and to all oil, gas and other minerals in, under or upon the land. This mineral deed was recorded in Book 8, page 325 of the Chancery Clerk’s records.[1] Also on December 24, 1928, the Roberts executed to C. C. Day an oil, gas and mineral lease on the same lands for a primary term of five years, with lease providing for a royalty of Vsth of the oil produced and a royalty of $150 per year for *475 each gas well produced. This lease expired not later than December 24, 1932. On February 5, 1938, C. C. Day quitclaimed to L. W. Rea “all of my right, title, and interest in all of the oil, gas and other mineral rights except my oil and gas royalty found in Lease Record 8, page 325 [on the land in question].”
C. C. Day died and devised all of his estate to the appellants, Clarence C. Day, Jr., and Frank R. Day. L. W. Rea subsequently conveyed his entire interest to his wife, Mary Isabella Rea. Appellee’s interest is derived either directly or indirectly from Mrs. Rea. (The style of this case is a misnomer. Actual appellees are George H. Miller, Mrs. Mary Isabella Rea and Ace Rig and Construction Co., Inc.)
The question before the Court is whether (1) C. C. Day reserved any estate in the oil, gas and other minerals in the deed to L. W. Rea dated February 5, 1938, and (2) if so, the quantum of the estate thus reserved.
The rules for construing the mineral deed of C. C. Day to L. W. Rea are stated in Harris v. Griffith, 210 So.2d 629 (Miss.1968), as follows:
In trying to solve this question, we should keep in mind certain well-established principles of construction of contracts. Those applicable here are (1) the deed must be read in the light of the circumstances surrounding the parties when it was executed; (2) that the construction should be upon the entire instrument, and each word and clause therein should be reconciled and given a meaning, if that can be reasonably done; (3) that the main document and that to which it refers must be construed together, (4) that if the wording of the deed is ambiguous, the practical construction placed thereon by the parties will have much weight in determining the meaning

(210 So.2d at 633).
In our opinion the construction we now place upon the exception or reservation in the deed in question is the only possible one consistent with the rule that we must give some meaning to all parts of an instrument. The word “royalty” has had a reasonably well understood meaning for many years and undoubtedly did when the deed in question was executed. We do not find that the reservation is void for uncertainty. The reservation of the royalty meant just what it said. The deed operated to convey the minerals with all executive rights to L. W. Rea with a royalty reserved to the grantor. The amount of the royalty is determined by what is fair and reasonable at the time and place the lease is made. See Oil & Gas Law, Williams & Meyers, Vol. 2, § 339.3, page 219 (Supp.1975).
In Harris v. Griffith, supra, a royalty interest was defined as the right to royalty under existing or future leases, the owner of which has no development right and no executive right. Westbrook v. Ball, 222 Miss. 788, 77 So.2d 274 (1955), and Mounger v. Pittman, 235 Miss. 85, 108 So.2d 565 (1959), recognize that the owner of a mineral fee can create by conveyance or reservation a separate estate in the minerals commonly referred to as a royalty interest. When this term is used in reference to a specific existing lease, royalty will mean that portion of the oil or gas for which the lessee must account to the lessor under the terms of the lease. Oil & Gas Law, Williams & Meyers, Vol. 1, § 301, p, 437 (Supp.1975).
The same treatise at section 301, pages 442 and 443, states that a nonexecutive mineral interest or a right to royalty may be conveyed under existing or future leases and the general rule as there set forth recognizes that a royalty interest may be created prior to the execution of a lease. Volume 2, sections 339, et seq., deal with the rights and duties of the owner of the executive rights in reference to future leases.
In the pleadings appellees recognized that C. C. Day reserved a royalty in the conveyance to L. W. Rea on February 5, 1938, but contended that the royalty thus reserved was limited to one-half of one-eighth of the oil and one-half of $150 per year per gas well as provided in the lease *476 dated December 24, 1928, from the Roberts to C. C. Day. As previously stated, this lease had expired at the time C. C. Day conveyed the minerals to L. W. Rea on February 5, 1938.
It is manifest that C. C. Day intendéd to reserve and did reserve a royalty interest. He had a one-half interest in the minerals and the reservation was sufficient to reserve a one-half interest in the royalties on any future lease of the mineral estate. The December 24, 1928, lease had long since expired at the time of C. C. Day’s mineral deed to L. W. Rea. The parties obviously did not intend to reserve a royalty in a lease that did not exist. The reservation could only apply to future leases. Any other interpretation would be tantamount to saying the parties intended that the words meant nothing.
Appellees rely upon the case of Commerce Trust Company v. Lyon, 284 S.W.2d 920 (Tex.C.C.A.1955), as authority for the proposition that the reservation in the deed from C. C. Day to L. W. Rea was limited to the royalties provided in the lease from the Roberts to C. C. Day dated December 24, 1928. That case is not in point. The reservation in the Texas case specifically retained the royalty interest “in said lease” then existing. The book and page referred to in the reservation in the present case was the book and page where the mineral deed from the Roberts to C. C. Day was recorded, not the lease.
We hold that the reservation in the deed from C. C. Day to L. W. Rea reserved a royalty interest under any future lease executed by the grantee or his successors in title, and that one-half of the royalties provided in such future leases is the quantum of the estate reserved by C. C. Day. We do not have in this case any question concerning whether the present leases executed by the present owner of the estate conveyed to L. W. Rea complied with the duties the lessor owed to the owners of the royalty interest. The decree of the trial court is reversed and judgment entered here adjudging Clarence C. Day, Jr., and Frank R. Day and their successors in title, if any, to be the owners of the royalty interest in any present or future leases executed by the successors in title to the one-half mineral interest conveyed by C. C. Day to L. W. Rea. But the royalty owner does not share in bonus or delay rentals. Mounger v. Pittman, supra.
This cause is remanded for any further appropriate proceedings consistent with this decision.
REVERSED, RENDERED AND REMANDED.
PATTERSON and INZER, P, JJ., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
SMITH, J., dissents.
APPENDIX

*477

. See Appendix.