34 So.2d 5

**TAYLOR v. BURNS et al.**

**7 Div. 894.**

Supreme Court of Alabama.

Feb. 19, 1948.

C. W. Stringer and Knox, Dixon & Wooten, all of Talladega, for appellees.

Merrill, Merrill & Vardaman, of Anniston, for appellant.

GARDNER, Chief Justice.

The appeal is from a final decree of August 16, 1946, in behalf of complainants (appellees) granting reformation of a deed executed by complainants to defendant (appellant) March 25, 1942, which was duly recorded April 29, 1942.

The bill was filed May 29, 1942, and the cause submitted to this court January 13, 1948.

The submission of the cause in the court below on July 30, 1946, was upon testimony taken orally before the court. What matters intervened in the cause from the filing of the bill to the final taking of the testimony is not made to appear and is not here important.

As we view it, the question for consideration is largely one of fact. So far as the law of the case is concerned we have often noted the salutary rule of caution to be observed in cases of this character and with a high degree of proof required, the burden resting upon complainant to establish his case for reformation by clear, convincing and satisfactory evidence. Great Atlantic & Pacific Tea Co. v. Engel Realty Co., 241 Ala. 236, 2 So.2d 425; authorities cited under Title 9, § 59, Code 1940. See also Title 47, § 136, Code 1940.

The ground for relief in the instant case rests upon the theory of a mutual mistake. The deed executed was prepared by an attorney for complainants, who does not recall with any degree of exactness how he procured the description contained in the deed here sought to be reformed. It was doubtless secured from one Horne, who was engaged by the attorney to make a survey of the property. In any event the description is of such a character that a layman not acquainted with section numbers and the like would more likely rest upon the advise of counsel whom he had employed to prepare the deed. The description reads as follows: "All of the Southwest quarter of the Northwest quarter (SE¼ of NW¼) of Section Twenty-eight (28), Township Sixteen (16) South, Range Five (5) East except a lot on the East side of said forty formerly owned by the Blue Eye Oil Mill and now owned by F. L. England."

It appears from the proof that the trade was made and largely conducted by Robert Burns, one of the owners. The property came to Robert and Harry Burns and their sister, Mrs. Watson, who resides in New York, by inheritance from their father, who had secured the same from one Jones. The proof for complainants is to the effect that this Jones place was divided by the Southern Railroad and a public road running along the side of the railroad right of way; and that these owners for their own purpose also designated that portion of the place lying north of the railroad as the "Jones Place Number 1," and that south of the road "Jones Place Number 2." Each place had upon it a dwelling house and a barn. The dwelling house on the north side was perhaps superior to that on the south side, but the barn on the south side was better than that on the north. The proof further justified the conclusion that the property on the south side of the railroad was equally as valuable as that on the north side. The deed, as drawn, it appears covers property both on the north and the south side including both dwellings. Robert Burns in his testimony states very positively that prior to the execution of this deed he went with defendant to this property. Burns was representing himself as well as his sister, who lives in New York, she having entrusted the matter to him. As to Mrs. Watson the agreement appears to be that she did not personally participate in the trade as she resided in New York when she executed the deed. Counsel further seem to insist that her representation by her brother, Robert Burns, acting as her agent, would not suffice. We have read and considered some of the authorities cited, among them Metropolitan Life Insurance Co. v. McClelland, 57 Idaho 139, 63 P.2d 657; Fife v. Cate, 85 Vt. 418, 82 A. 741; Barker v. Pullman's Palace Car Co., C.C., 124 F. 555, and 53 C.J. 947. But we do not read these authorities to that effect. Indeed, the text in 53 C.J. supra, clearly indicates only that mutuality of mistake is essential, and furthermore when the agreement insisted upon as the actual one is that made by an agent, it must be made to appear the agent had authority to make it. But here Robert Burns testifies positively to his full authority to represent his sister Mrs. Watson who entrusted the matter to him. And he further states he communicated with her and that she had agreed to accept the nine hundred dollars. We find nothing in reason or authority which would deny relief merely because Mrs. Watson was not present in person, if in fact there was a mutual mistake.

Burns testified that while on the property, with the defendant, he discussed with him the lines as best he knew, and that he and the defendant had a thorough understanding that the defendant was to get nothing south of the railroad tracks; that no acreage was mentioned and the agreement was made for a sum total of nine hundred dollars. Robert Burns' testimony is further to the effect that after viewing the property he and defendant were at Burns' house where a rough sketch was made of what was to be sold and that a down payment of two hundred dollars was made by the defendant. The wife of Burns wrote out a receipt, having misspelled defendant's name, and this receipt discloses that it was a deposit and part payment "on place known to us as Jones Place Number 1." This was in evidence, together with the rough sketch. The wife of Burns drew another receipt and gave it to the defendant, which receipt appears afterwards to have been destroyed by fire, and which defendant insists was the only receipt given. The brother, Harry Burns, was at the house at the time this down payment was made, and he approved the sale.

There was delay in the delivery of the deed, which was sent to New York for Mrs. Watson's signature. Mrs. Burns' testimony fully corroborated that of her husband, to the effect that defendant was told the property he was buying was north of the railroad. Mrs. Burns states that about one or two weeks after the delivery of the deed she learned that defendant was also claiming the property south of the railroad. Upon so learning, she and her husband went to see the defendant and told him there was a mistake in the deed and that they would like to have him correct it. They asked him what he was going to do about it. His reply was: "I consider that to my good luck and your hard luck."

All of the foregoing proof was denied by the defendant, and he offered some testimony concerning the value of the property, both north and south of the road, and he insists that the deed was correct as drawn.

We have attempted merely to give a general outline of the proof offered for the consideration of the chancellor. We might add that our study of the record persuades us that the decree was amply sustained by the proof.

■ Counsel for defendant lay stress upon the alleged negligent failure of the complainants to read the deed. Upon this point the case of Ballentine v. Bradley, 238 Ala. 446, 191 So. 618, 621, is much in point. It was there stressed that the draftsman was an attorney representing the other party to the transaction, and speaking to the question that the draftsman of the contract so acted·it was observed as follows: "But if in fact the parties had agreed upon a sale of the land which only was located south of the Buck Bridge Road, and that no land north of this road was sold or intended to be sold, mutuality of the mistake was made to appear, and it would be immaterial whom the draftsman represented, nor would it be fatal to relief even if defendant herself had written the deed. The following from McCaskill v. Toole, 218 Ala. 523, 119 So. 214, expresses this thought: 'Where an accord of minds is reached, and the document intended to express such agreement fails so to do by reason of the mistake of the draftsman, it is immaterial who employed him. His mistake was merely the occasion of the parties executing a paper not expressive of their common intent. No matter if one of them is the draftsman, the real concern is: Does it express the agreement of the parties?'" And speaking further to the matter of negligence this court in the Ballentine case, supra, approved the statement of Mr. Pomeroy (2 Pom.Eq.Jur., sec. 856) to the effect that "even a clearly established negligence may not, of itself, be sufficient ground for refusing relief if it appears the other party has not been prejudiced thereby," and in Gralapp v. Hill, 205 Ala. 569, 88 So. 665, 666, it was said the negligence that is referred to in cases of this character, that would bar relief, must be "culpable and injurious negligence." It is clear enough that these principles are applicable here. Complainants employed an attorney to look after their interests, to prepare the deed; the attorney having some difficulty in securing a proper description, secured the services of a surveyor. Defendant was at

a very early period notified of the error and requested to correct it. Clearly enough he could complain of no injurious consequence following a correction of which demand was so made. Under these circumstances complainants were fully justified in assuming that the deed with the description therein carried out the intention of the parties.

We think the evidence fully sustains the view that the description was erroneous and did not convey the property agreed upon when the same was made and the price stipulated. It was a case calling for equitable relief, which in our opinion was amply justified.

There was no violation of Equity Rule 57 as to any failure to set out the deed sought to be reformed in the note of testimony. The cause was tried in open court upon oral proof as provided in Equity Rule 56, and no note of testimony was necessary. Equity Rule 57, Title 7, Appendix, Pocket Part, Code 1940. Moreover, the deed was an exhibit to the bill and referred to in second paragraph which was admitted in the answer.

It follows from what has been said that the decree is due to be affirmed. And it is so ordered.

Affirmed.

FOSTER, LAWSON and STAKELY, JJ., concur.