283 So.2d 426

**MID-STATE HOMES, INC., a corp., et al.**

v.

**Robert ANDERTON et al.**

**SC 106.**

Supreme Court of Alabama.

Sept. 27, 1973.

R. A. Norred, Birmingham, for appellants.

H. T. Foster, and John F. Proctor, Scottsboro, for appellees.

PER CURIAM.

This is an appeal from a final decree of the Circuit Court of Jackson County wherein the trial court refused to reform the description in certain instruments as sought by the complainants below and denied the prayer of complainants' amended bill that authority be granted them to remove a house from a parcel of land owned by two of the respondents.

On December 18, 1961, J. W. Anderton and Minnie B. Anderton conveyed to their daughter Mary Lou Cloud and her husband Charles, a parcel of land containing one-half acre, more or less, for the purpose of building a house thereon. On April 14, 1962, the Andertons executed a second deed to the Clouds for the purpose of changing the description in the first deed. The two deeds describe the same parcel of land although different descriptive terms are used in them.

Shortly after the Clouds received their deeds, they had a house constructed without having a survey made of the parcel of land described in the deeds to them from the Andertons. That house, which will sometimes be referred to as the first house, was not constructed entirely on the land described in the afore-mentioned deeds, but apparently the Clouds were not aware of this fact until long after the first house was built.

In January of 1968, Jim Walter Corporation, hereinafter sometimes referred to as Jim Walter, was engaged in the business of constructing shell homes on land owned by others. The Clouds, after talking with Jim Walter's agent-salesman Jimmy Garner, entered into a building contract with Jim Walter and executed a mortgage to that corporation. The building contract and the mortgage were both executed on January 30, 1968. The property description used in both instruments was the same as that used in the first deed from the Andertons to the Clouds, that is, the deed of December 18, 1961. Garner, who wrote the description into those instruments, used the deed of December 18, 1961, which was delivered to him by the Clouds.

On April 8, 1968, the Clouds executed another mortgage to Jim Walter "FOR THE PURPOSE OF CORRECTING THE AMOUNT OF MORTGAGE, AMOUNT OF PAYMENTS AND LAST INSTALLMENT DATE" of the mortgage executed on January 30, 1968. The description used was the same as that used in the mortgage of January 30, 1968, and in the deed of December 18, 1961.

When the two mortgages were introduced in evidence, they each contained the description used in the second deed from the Andertons to the Clouds which description had been typed and placed over the original description by the use of Scotch tape. The record is silent as to who made these additions to the mortgages or when they were made. But the additions or changes do not bear on the questions presented on this appeal because, as indicated previously, the same parcel of land is described by each of the two descriptions.

The mortgage under date of January 30, 1968, was assigned by Jim Walter to Mid-State Homes, Inc. on February 15, 1968, and the mortgage of April 8, 1968, was assigned by Jim Walter to Mid-State on April 25, 1968.

The exact time when the Jim Walter home was constructed does not clearly appear from the record, but it was apparently completed by April 15, 1968.

The Clouds' first home was moved, and they moved into the Jim Walter home at a time not shown with certainty—probably in the spring of 1968. The Clouds made payments on the Jim Walter home until May of 1969 when they stopped because they entertained the view that the house was not built on their land and was not constructed in accordance with the terms of their contract with Jim Walter.

In October, 1969, Mid-State as assignee of the mortgage of April 8, 1968, foreclosed that mortgage; and, at the foreclosure sale, became the purchaser of the property described therein.

After the foreclosure, Mid-State and the Clouds had surveys made of the land described in that mortgage, which surveys show that the Jim Walter home was not built on the land described in the mortgage. It had been constructed on land owned by Mr. and Mrs. Anderton, who as shown above were the parents of Mrs. Cloud.

Thereafter Mid-State and Jim Walter instituted this litigation against the Andertons and the Clouds for the purpose of reforming the description in the deed from the Andertons to the Clouds under date of April 14, 1962, and the description in the mortgage of January 30, 1968, so that those instruments would describe the parcel of land upon which the Jim Walter home was constructed.

In the stating part of their bill, the complainants averred that the descriptions set forth in the two instruments last referred to above were incorporated in those instruments "through the mutual mistake of fact of each of the parties to said instruments, and that it was the mutual intent and purpose of each of the parties to said instruments to incorporate therein, as the prop-

erty to be conveyed, transferred, assigned, or sold, a parcel of real estate, the true description of which is as follows: * * *"

The Andertons answered by denying the averments of the bill to the effect that the description in the two instruments was incorporated therein through mutual mistake and by alleging: "Your respondents aver that the complainant constructed a house on their property through a mistake on the complainant's part and not a mistake on the part of the respondents, *and that the respondents make no claim to this house*, but say that the complainants are not entitled to the property upon which the house is located, and have no claim to said property." (Emphasis Supplied)

Thereafter complainants filed an amendment to their bill wherein after taking note of the fact that the Andertons in their answer stated that they made no claim to the house averred:

"Complainants further respectfully pray that they, or either of them, be allowed to remove the dwelling house heretofore constructed by the Jim Walter Corporation upon the real estate owned by the respondents, J. W. Anderton and Minnie B. Anderton from such real estate, and complainants further, in pursuant (sic) of their offer to do equity heretofore made, specifically offer to accomplish such removal without any cost or expense to such respondents, and specifically agree to indemnify said respondents from any damage to such real estate which may accrue from the removal thereof."

The Clouds then filed their answer wherein they admitted that the Jim Walter home was not built on their property but denied the averments of the bill, as amended, to the effect that the deeds from the Andertons to them did not correctly describe the property which was intended to be conveyed.

The Andertons amended their answer by deleting therefrom the language which we quoted from their answer and by substituting in lieu thereof the following:

"(d) Your respondents aver that the complainant constructed a house on their property through a mistake on the complainant's part and not a mistake on the part of the respondent and say that the complainants are not entitled to the property upon which the house is located, and have no claim to said property; that your respondents are entitled to keep the house or to be compensated for the damage done to their property by way of trespass on the part of the complainant as well as rent from the date said house was constructed and respondents ask for damages for respondents by way of a cross-bill and pray that they will be awarded the house or in the alternative that they be awarded damages for trespass to their property and a fair rental for its use and detention."

The complainants as cross-respondents answered Paragraph (d) of the Andertons' amended answer by denying that the Andertons were entitled "to be awarded the house therein referred to, or that they are entitled to any damages for trespass, or for a fair rental value."

Following a hearing wherein the testimony was taken ore tenus, the trial court ordered, adjudged and decreed as follows:

"(1) That the complainants' request for reformation of the mortgages of January 30, 1968 and April 8, 1968 by the respondent Clouds, is hereby denied.

"(2) The respondent Clouds, are entitled to possession of the 'shell home located on the property of the respondent Andertons, and the prayer of the complainants to remove the house to the property upon which they have a foreclosure deed is denied.

" * * *"

From that decree, the complainant Mid-State appealed to this court.

Mrs. Minnie B. Anderton died after the appeal was taken. As to her, the appeal was revived in the name of her heirs at law prior to submission in this court. S. Ct. Rule 33. See Curry v. Holmes, 249 Ala. 545, 32 So.2d 39.

The action of the trial court in denying complainants' prayer for reformation was grounded on the following findings:

"The Court fails to find any fraud on the part of any of the respondents. The Court finds that there was a mistake on the part of complainant, Mid-State Homes, Inc. in that they constructed the 'shell home' upon the wrong property, but the Court fails to find any mistake upon the part of the respondent Clouds, or the respondent Andertons, which would justify the reformation prayed for."

The trial court's finding to the effect that the evidence failed to show fraud on the part of any of the respondents is not questioned. In fact, the complainants did not seek reformation on the ground of fraud on the part of any of the respondents.

As we have shown previously complainants' prayer for reformation was grounded on the averments that the descriptions sought to be reformed were incorporated in the two instruments " * * * through the mutual mistake of fact of each of the parties to said instruments * * *."

■ This court has repeatedly pointed out that in order to warrant equity to grant relief by reformation, the complainant has the burden of showing by evidence that is clear, exact, convincing and satisfactory that the instrument does not express the true agreement of the parties. Crane v. Blackburn, 187 Ala. 298, 65 So. 812; Hertzler v. Stephens, 119 Ala. 333, 24 So. 521; Hill v. Harding, 233 Ala. 343, 172 So. 98. The burden is also upon the complainants to show what, in fact, the parties had intended the writing should contain. Lipham v. Shamblee, 205 Ala. 498, 88 So.

569; Garrett v. Kirksey, 279 Ala. 10, 181 So.2d 80.

■ When reformation is sought solely on the ground of mistake, no fraud intervening, mutuality of mistake is essential. Duckett v. Lipscomb, 287 Ala. 668, 255 So. 2d 12; Darden v. Meadows, 259 Ala. 676, 68 So.2d 709; Grove v. Robertson, 255 Ala. 346, 51 So.2d 528; Ballentine v. Bradley, 236 Ala. 326, 182 So. 399; Webb v. Sprott, 225 Ala. 600, 144 So. 569.

■■ The testimony was taken ore tenus, hence, the finding of the trial court as to the facts is to be accorded all the presumptions indulged in favor of the verdict of a jury. Duckett v. Lipscomb, supra. After indulging that presumption we cannot say that the trial court's finding to the effect that mutuality of mistake was not shown is erroneous.

We take note of the fact that the trial court denied complainants': "request for reformation of the mortgages of January 30, 1968 and April 8, 1968 * * *." The trial court was in error in including the mortgage of April 8, 1968. The complainants did not seek reformation of that mortgage but did seek reformation of the deed from the Andertons to the Clouds which was executed in April of 1962. No question is raised in regard to this inadvertence on the part of the trial court and we think the decree denying reformation applies to the April, 1962, deed as well as to the mortgage of January 30, 1968, which was foreclosed.

The case of Hulsey v. Folsom, 286 Ala. 474, 241 So.2d 889, not cited in briefs, has been carefully considered. The facts in that case are in some respects strikingly similar to the facts of this case but there is one factual distinction which renders the holding in the *Hulsey* case inapposite to the case at bar. In *Hulsey* it was said: " * * * It is apparent that every party to this transaction—the Dunns who originally deeded the land to the Hulseys, the Hulseys and Tri-State—all thought that the deed described the land on which the

house was built. Each of the parties intended to convey the two acres of land on which the house was built. * * *" (286 Ala. at 477, 241 So.2d at 892)

In the instant case the evidence is susceptible of the conclusion that the Andertons did not intend to convey the land upon which the Jim Walter house was constructed. Certain it is that we cannot hold that the trial judge erred in not finding from the evidence that each of the parties intended to convey the one-half acre of land on which the Jim Walter house was constructed rather than the land described in the deeds and the mortgages.

It follows that the trial court did not err to a reversal in refusing to order reformation of the descriptions in the deed of April, 1962, and the mortgage of April 8, 1968, as prayed by the complainants.

In Subparagraph (2) of the trial court's decree quoted above it is said: " * * * and the prayer of the complainants to remove the house to the property upon which they have a foreclosure deed is denied." The complainants did not pray that they be permitted to remove the Jim Walter house to the land described in the mortgage which was foreclosed so we will treat that part of Subparagraph (2) of the decree last quoted above as being surplusage. The respondents only sought the right to remove the Jim Walter house from the land on which it had been built and did not pray that they be permitted to place it on any other tract of land.

Under the facts of this case we are unwilling to hold that the trial court erred in refusing to permit the removal of the Jim Walter house. Before that house was built a surveyor employed by complainants, or one of them, made a survey of the land described in one of the deeds from the Andertons to the Clouds. The surveyor staked out the property in accordance with the survey. Yet, an independent contractor on behalf of the complainants, or one of them, ignored the stakes as well as the survey and constructed the "shell home" on Anderton property. According to the respondent Anderton he told workmen who were engaged in constructing the house that they were building it on the wrong land. In response to this admonition Anderton was told in effect that the Jim Walter house was being constructed in accordance with the survey.

The complainants built only a "shell home." The Clouds completed it at considerable expense although the exact amount expended by them is not disclosed by the record.

We are clear to the conclusion that the trial court reached an equitable result in refusing to permit the complainants to remove the Jim Walter house from the Andertons' land. We are not called upon on this appeal to consider that part of the decree which may be said to award the "shell home" to the Clouds as opposed to the Andertons.

The decree of the trial court is affirmed.

Affirmed.

All Justices concur.