David **KELLN** et ux., Appellants,

v.

Sammy **BROWNLEE** et al., Appellees.

No. 8455.

Court of Civil Appeals of Texas, Amarillo.

Dec. 16, 1974.

Rehearing Denied Jan. 13, 1975.

J. E. Thompson, Pampa, for appellants.

Allen & Gaines, L. Bruce Roberson, Perryton, for appellees.

ROBINSON, Justice.

The trial court granted a declaratory judgment establishing the right of plaintiffs to suspended and future royalties by virtue of mineral deeds executed by defendants Kellns. Defendants Kellns appeal. Affirmed as modified.

The facts in this case are not in dispute. At the time of the conveyances in question the defendants owned no interest in the oil, gas and other minerals in Section 59, Block 43, H. & T. C. Ry. Co. Survey, Lipscomb and Ochiltree Counties, Texas, except: (1) an undivided one-half interest or an undivided 40.5 acres in the South Half of the Northeast Quarter (S/2 of NE/4); (2) an undivided one-half interest or an undivided 40.5 acres in the South Half of the Southeast Quarter (S/2 of SE/4); and (3) an undivided seven-eighths interest or an undivided 70.875 acres in the North Half of the Northwest Quarter (N/2 of NW/4). Therefore, the Kellns' undivided mineral interests affected 243 acres of Section 59 and amounted to a total undivided interest of 151.875 acres.

On January 26, 1957, the Kellns executed to J. D. Crow an oil and gas lease of all of the above described Kelln land in Section 59. The lease granted lessee at its option the right and power to pool or combine the land covered by the lease with any other land, lease or leases.

Between September 29, 1956 and May 1, 1962, oil and gas leases covering all of

Section 59 had been executed by various lessors, some of the leases to J. D. Crow and some to Cabot Corporation. The leases in which Crow was the lessee, including the Kelln lease to Crow, were assigned to Cabot Corporation.

On February 19, 1964, the Kellns executed and delivered a mineral deed to grantees William T. Brownlee and Dan E. Archer, purporting to convey an undivided $\frac{50}{640}$ interest in minerals in all of Section 59. On September 2, 1964, the Kellns executed and delivered another such mineral deed to grantee William T. Brownlee. The granting clause and the questioned descriptions in each deed are as follows:

". . . have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto the said Grantee, an undivided $\frac{50}{640}$ interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in Lipscomb & Ochiltree Counties, Texas, to-wit:

"All of Section Number Fifty-nine (59), Block 43, H. & T.C.R.R. Company Survey, Lipscomb County, Texas, and Ochiltree County, Texas."

\* \* \* \* \* \*

"Said land being now under an oil and gas lease executed in favor of Cabot Oil Company, it is understood and agreed that this sale is made subject to the terms of said lease and/or any other valid lease covering same, but covers and includes $\frac{50}{640}$ of all of the oil royalty and gas rental or royalty due and to be paid under terms of said lease, in so far as it covers the above described land."

On November 2 and 10, 1966, respectively, Cabot Corporation filed in the deed records of Ochiltree and Lipscomb Counties, Texas, a "Designation of Consolidated Leasehold Estate," declaring all of Section 59 a pooled and consolidated leasehold estate for exploration, development and pro-

duction of gas. Cabot drilled a well on Section 59 and obtained a gas well which produces gas in commercial quantities. Cabot then prepared a division order setting out the interests of Brownlee and Archer at $\frac{100}{640}$ of the $\frac{1}{8}$ royalty from Section 59. The Kellns refused to sign this division order, contending that Brownlee and Archer are entitled to only $\frac{100}{640}$th of the royalty payable under the Kelln lease, that is $\frac{100}{640}$ of $\frac{151}{648}$ of $\frac{1}{8}$ royalty from Section 59. Cabot then suspended the payment of the disputed royalty.

The case before us was filed by Brownlee and Archer, seeking to have their right to suspended and future royalty determined by the court. Grantors Kellns filed a cross-action seeking declaratory judgment determining the legal effect of the instruments in question and the proportionate interest of the parties in the royalty from the gas well. Archer and Brownlee answered defendants' cross-action, alleging that Kellns became owners of an undivided interest in, under or that might be produced from Section 59 by virtue of a cross-conveyance of mineral interest of the several owners in Section 59 as a result of the consolidation of leases under Cabot's "Designation of Consolidated Leasehold Estate" and that because of the warranty in the deed from Kellns to Archer and Brownlee, Kellns are now estopped to deny ownership in Archer and Brownlee.

None of the pleadings seek recovery for damages for breach of warranty nor allege any fraud, misrepresentation or mistake, nor do they seek reformation of the deeds in question. The case was tried to the court without a jury and no evidence, other than the instruments themselves, was offered concerning the intention of the parties with regard to the deeds in question.

The trial court entered a judgment decreeing as follows:

"It is therefore, ORDERED, ADJUDGED and DECREED, that Plaintiffs are entitled to all of the suspended

royalty payments that are now held by Cabot Corporation with respect to the disputed interests of the parties herein and further that Plaintiffs are entitled to $^{100}/_{640}$th of the royalty on oil, gas or other minerals produced from Section Fifty-nine (59), Block Forty-three (43), H&TC Ry. Co. Survey, Lipscomb and Ochiltree Counties, Texas;

"It is further, ORDERED, AD-JUDGED and DECREED by the court that the interests of Sammy Brownlee and Dan Archer in the suspended and future royalty payments are established to conform to their interests as they appear by reason of the two (2) deeds in question . . . ."

Defendants Kellns appealed.

■ In the case before us the deed purported to convey in plain and unambiguous language a fractional undivided interest in the minerals in and under and that may be produced from all of Section 59. Where the terms of a mineral deed are plain and unambiguous, the construction given it by the contracting parties is immaterial. Richardson v. Hart, 143 Tex. 392, 185 S. W.2d 563 (1945).

■ At the time of the conveyance, grantors Kellns did not own an interest in all of Section 59, their interest being limited to an undivided interest totaling 151 acres in three 80-acre tracts out of Section 59. The partial failure of the warranted title did not serve to increase the interest conveyed in the land actually owned by Kellns, it being the rule that upon failure of title to part of the land which a deed purports to convey, the grantee's remedy is for breach of warranty. He is not entitled to have other lands belonging to the grantor set off or decreed to him in lieu of that to which his title has failed. Forrest v. Hanson, 424 S.W.2d 899 (Tex.1968); Daniel v. Allen, 129 S.W.2d 392 (Tex.Civ.App. —Texarkana 1939, no writ).

■ The record shows that mineral leases had been executed on all of Section 59 prior to the mineral deeds in question. When, subsequent to the date of the deeds, Cabot Corporation filed its designation declaring all of Section 59 a pooled and consolidated leasehold estate, it effected a cross-conveyance of the royalty interest of the various lessors. The Supreme Court stated the rule in Montgomery v. Rittersbacher, 424 S.W.2d 210 (Tex.1968), as follows:

"This Court has held that pooling effects a cross-conveyance among the owners of minerals under the various tracts of royalty or minerals in a pool so that they all own undivided interests under the unitized tract in the proportion their contribution bears to the unitized tract. Veal v. Thomason, 138 Tex. 341, 159 S. W.2d 472 (1942)."

Hence, by virtue of the pooling and consolidation in 1966, the Kellns acquired for the duration of such pooling and consolidation the undivided interest in all of Section 59 which they did not own, but warranted in their deeds to Archer and Brownlee, in 1964. Having after-acquired title in the interest in question, they are estopped to deny the title which they warranted to their grantees, Archer and Brownlee. Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878 (1940).

■ The deeds in question purported to convey two separate and distinct estates in land. The first is the permanent interest in the minerals. The other was the royalty to be paid under an existing lease or leases. The permanent interest in minerals is determined by the precise grant in each deed of $^{5}/_{640}$ of all of the oil, gas or other minerals in and under all of Section 59. In the absence of any provision to the contrary, the grant of a permanent mineral interest carries with it by operation of law the right to the proportionate share of the royalties paid under any existing lease. Richardson v. Hart, supra. The purported grant in the deeds in question of a $^{5}/_{640}$ permanent mineral interest would thus, in the absence of a specific conveyance of

royalty, carry with it by operation of law, a $^{50}\!/_{640}$ interest in royalty under any existing lease. The deeds before us, however, did contain a provision relating to the conveyance of royalty. The question for our determination is the effect of that provision.

 The deeds recite that the land is under an oil and gas lease executed in favor of Cabot Corporation and recite that the deed covers and includes $^{50}\!/_{640}$ of rentals and royalty payable under "said" lease. The deeds are further made subject to any other valid lease covering the land purportedly conveyed. Each deed fixes the grantee's share of royalty in the specifically mentioned lease at $^{50}\!/_{640}$. To the extent that the conveyance of royalty is fixed by operation of law it is likewise set at $^{50}\!/_{640}$. Thus, whether royalty interests are specifically set by the deed on a specified lease, or whether they are set by operation of law on other existing leases, the deed purports to convey $^{50}\!/_{640}$ of the royalties payable on each lease on all of Section 59. Grantors having acquired an undivided interest in royalty under such leases by virtue of the pooling and consolidation may not now assert such title against their grantees.

The various leases on Section 59 contain provision for the termination of any unitized area. Upon termination of the unitization of Section 59, neither Kellns nor Archer and Brownlee will have any interest in royalty from the portion of Section 59 owned by other lessors. The judgment of the trial court should have limited the determination that Archer and Brownlee are entitled to $^{100}\!/_{640}$th of the future royalty on all of Section 59 to the period of the duration of the pooling and consolidation of Section 59 effected by the "Designation of Consolidated Leasehold Estate" filed by Cabot Corporation pursuant to the authority of the Kellns' lease. The judgment is accordingly modified.

The trial court found that, by the conveyance of an undivided $^{50}\!/_{640}$ interest in all of Section 59, grantors intended to convey 50 mineral acres out of whatever part of Section 59 the Kellns owned. Appellants correctly challenge this finding on the ground that it is supported neither by pleading nor by any evidence. Although this finding is erroneous, it is not reversible error. The trial court's judgment will be upheld if it is correct on any applicable theory of law regardless of whether the trial court gives the correct reason or no reason at all. Holbrook v. City of El Paso, 377 S.W.2d 669 (Tex.Civ.App.—El Paso 1964, writ ref'd n. r. e.).

The judgment is modified as stated above and as modified is affirmed.