Woodrow Wilson WILLIAMS, Herman Lathan, Ora Dee Scarbrough, Seig M. Coaker, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

PHILLIPS PETROLEUM COMPANY, a corporation, Defendant,

and

Wiley Fairchild et al., Defendants in Counterclaim.

Civ. A. No. 76–254–P.

United States District Court, S. D. Alabama, S. D.

March 30, 1978.

As Modified May 19, 1978.

---

7. The experimental results are contained in DXUU, and the experimental technique is described by Hartung, Tr. at 550–63.

Christopher G. Hume, III, Mobile, Ala., S. J. Laurie, Chatom, Ala., for plaintiffs.

Broox G. Holmes and Edward G. Hawkins, Mobile, Ala., for defendant.

Harry H. Riddick and Oliver J. Latour, Jr., Mobile, Ala., for defendants in counterclaim.

## OPINION AND ORDER

PITTMAN, Chief Judge.

This 28 U.S.C. § 1332 diversity action concerns the reformation of a mineral right and royalty transfer deed. The plaintiffs, representatives of a class, are the heirs and assignees of the heirs of Jessie R. Williams (also known as Jesse R. Williams) who died in 1970. Arnold Grenn, Wiley Fairchild, Rodney Fairchild, C. D. Fairchild and William Wallace Alfred, defendants in interpleader (hereinafter interpleader defendants or Grenn, et al.) are the assignees under said mineral right and royalty transfer deed from Jessie Williams to Arnold Grenn, dated April 16, 1970 (hereinafter Williams-Grenn deed), conveying an undivided fractional interest in and to all the oil, gas and other minerals described in said instrument.

This action was initiated by plaintiffs against Phillips Petroleum Company to release the royalties held in suspense by them attributable to 8.315 mineral acres, which had been placed in line for payment to plaintiffs. Phillips Petroleum Company filed a Counterclaim for Interpleader against plaintiffs and Grenn, et al., filed a Claim in Interpleader and a cross-claim against plaintiffs seeking reformation of the Williams-Grenn deed. Phillips Petroleum Company was dismissed as a party to the action by stipulation of all parties and by paying the royalties attributable to .815 acres to plaintiffs' class, thereby leaving a balance of 7.5 mineral acres held in suspense.

## I. Factual Background

Jesse Williams (Williams) in 1963 was the owner of large tracts of land in Washington County, Alabama. Rumors were circulating in Chatom, the county seat, that oil was subject to discovery in various parts of the county. In December 1963, Williams leased oil and gas drilling rights to large tracts of his land in Section 20 to Brooks and Bianchi. In return for the lease, the lessees agreed to pay Williams or his heirs or assigns oil and gas royalties. By way of assignment, Phillips Petroleum, which at one time was a defendant and plaintiff in interpleader in this action but was later dismissed, presently owns the drilling rights relevant to this action in Section 20 purchased in 1963 by Brooks and Bianchi. Drilling by Phillips on this Section 20 property began on March 24, 1970, at what is named the Williams AA well. At that time, however, it was not definitely known whether oil existed in the area of operations. In March 1970, about when the drilling by Phillips began on the Williams AA well, Grenn, et al., as speculators, were searching in Washington County, Alabama, for mineral interests to purchase at $100 an acre. They offered to purchase mineral acres from Williams at this price. Grenn, et al., or their agents, traced title to Williams' mineral acres. Grenn, et al., intended to purchase and mistakenly determined that Williams owned a fractional interest in certain portions of land totaling 55 mineral acres. Grenn represented to Williams that the latter owned a total of 55 mineral acres in certain tracts described in a deed prepared by Grenn and presented to Williams. Williams was offered $150.00 per acre.

Grenn read to Williams some, but apparently not all, of the deed which was a form "Mineral Right and Royalty Transfer" deed. Williams was allegedly informed that he was conveying an undivided fractional interest in 55 mineral acres in Section 20, then under lease to Phillips Petroleum Company. On April 16, 1970, Williams marked the deed in execution of the document (he was unable to write). The reading and signing were witnessed by both Williams' brother and interpleader-defendant Wallace Allred's brother. The agreement was notarized.

Plaintiffs claim fraud was perpetrated by the grantees by inducing Williams to enter into a mineral deed at a time when he was not mentally aware of the consequences of his act. Mr. Williams, at the time of the conveyance, was in his 80's, and, for all practical purposes, blind. Payment by Grenn, et al., for the 55 acres at $150.00 was by a draft that was payable beginning ten days after the date of the transaction.

Williams died five months later on September 16, 1970. The remaining mineral interests owned by Williams in Section 20 descended to his heirs, the plaintiffs in this action. On November 20, 1970, the State Oil and Gas Board found the Williams AA well to be a producing well and certified all of Section 20 to be a producing zone.

In March 1971, Wallace Allred, attorney for the grantee and his principals, notified Howard Scott, attorney for Williams during his lifetime, and executor of his estate, of the failure of title to 7.5 mineral acres from the deed of April 1970. The disputed 7.5 mineral acres contained in the conveyance that was prepared by the grantee did not belong to Williams at the time he purported to convey this interest. Scott offered to refund the payment applicable to the 7.5 mineral acres ($1,125.00), but since the area was found to be productive, the offer was turned down and Grenn, et al., asked for conveyance of an unclouded 7.5 mineral acres. This request was turned down by Scott.

On January 6, 1975, an attorney for the Fairchild's wrote Phillips Petroleum Company and made a claim to 8.315 mineral acres covered by the Williams AA Lease. The royalties attributed to said 8.315 acres had been set up by Phillips for payment to the plaintiffs. As a result of the Fairchild's attorney's letter of January 6, 1975, Phillips Petroleum Company placed the royalties which had been set up for pay to the plaintiff's class and attributable to said 8.315 acres in suspense. On January 8, 1975, interpleader-defendants made another claim to additional acreage under the Williams AA Lease. Phillips furthermore filed a counterclaim in interpleader naming as defendants the heirs of Williams (original plaintiffs) and Grenn, et al., as the parties interested in the stake.

Grenn, et al., cross-claimed against plaintiffs for conveyance of 7.5 mineral acres as well as for reformation of the deed to reflect this conveyance. Plaintiffs also filed a cross-claim against Grenn, et al., for slander of title, damages and attorney fees. A non-jury trial was held and the court adopts the following conclusions.

## II. *Legal Conclusions*

### A. *Reformation*

1. Alabama Law of Equitable Modification of Agreements.

Grenn, et al., seek reformation of the 1970 Williams-Grenn deed to reflect what they contend to be the true intent of the parties. They contend the true intent of the parties was to convey a full 55 mineral acres, and therefore they are entitled to reformation of the instrument to include an additional 7.5 mineral acres. Some exploration of the history and bounds of ownership is necessary before this court can properly resolve the issues.

More than fourteen years ago, Williams granted David K. Brooks and John H. Bianchi an oil, gas and mineral lease (hereinafter called "Williams AA Lease") dated December 12, 1963, which covered certain lands in Section 20, Township 6 North, Range 4 West, Washington County, Alabama. The Williams AA Lease was recorded in Book 133, page 126 in the office of the Probate Judge of Washington County. By the terms of the agreements, Williams retained a one-eighth royalty interest in the leased mineral acres.

In the Williams-Grenn deed in 1970, Williams conveyed to Grenn the undivided mineral interest to any mineral rights he may have retained or which may have arisen out of the 1963 deed to Brooks and Bianchi, including the royalty interest he retained in the parcels described in the Williams-Grenn deed of 1970.

The 1970 deed, prepared by Grenn, contained a faulty description of the land conveyed. Partial title failure came about because the grantor Williams did not have good merchantable title to 7.5 mineral acres of the overall 55 conveyed. The Williams-Grenn deed attempted to grant the following interests in mineral acreage which Williams did not possess: one-eighth interest in and to 1.25 net mineral acres as S.W. ¼ of S.E. ¼ of S.E. ¼ of Section 20, Township 6 North, Range 4 West; one-eighth interest

in and to 1.25 net mineral acres as S.E. ¼ of N.E. ¼ of S.E. ¼ of Section 20, Township 6 North, Range 4 West; one-half interest in and to 5 net mineral acres as N.E. ¼ of S.W. ¼ of N.E. ¼ of Section 20, Township 6 North, Range 4 West.

On September 16, 1970, Williams died. Through conveyances made prior to his death and by death, Williams' mineral interests encompassed by the Williams AA Lease devolved to the plaintiffs' class and to the defendants in counterclaim. It is undisputed that through grantor Williams the plaintiffs' class now owns 75 mineral acres in Section 20.

Phillips Petroleum Company had acquired the Williams AA Lease through mesne assignments from Brooks and Bianchi. Phillips spudded the Williams AA well on March 24, 1970, on a forty-acre. drilling unit comprising the S.E. ¼ of the S.E. ¼ of Section 20, Township 6 North, Range 4 West, Washington County, Alabama. The well was completed prior to November 20, 1970.

By Order No. 70–17 of November 20, 1970, the State Oil and Gas Board of Alabama (1) found that the productive zone of the Williams AA well and all strata productive of hydrocarbons correlated with said zone constituted a separate and distinct gas producing pool in the Chatom field; and (2) enlarged the drilling unit for the Williams AA well to comprise approximately 640 contiguous surface acres that made up Section 20, Township 6 North, Range 4 West, Washington County, Alabama.

The error in the Williams-Grenn deed description was due to the negligence of Grenn, et al., in conducting the title search. Grenn, as the grantee, as part of the sales pitch contacted Williams, offered him $150.00 an acre, and offered to conduct the title search to determine the number of mineral acres and royalty rights Williams had in certain tracts in Section 20. Grenn, et al., by their own admission conducted only a partial title search and prior to the completion of the title examination represented to Williams he had 55 acres in certain tracts with stated undivided mineral and royalty rights, set out in the deed which Grenn had prepared. Grenn read most, including the description of the property, but not all of the deed prepared by him to Williams and he placed his mark on it. The deed description was by specific tract, but beneath the tract description the deed contained the following language:

"It is the intention of the Grantor herein, and he does hereby convey unto the Grantee herein an undivided full Fifty-Five (55) mineral acres according to the terms contained herein."

This quoted language is the basis upon which Grenn, et al., predicate their right to reformation so as to include an additional 7.5 mineral acres of Williams' other mineral interests.

 It is well settled that one of the established powers of equitable jurisdiction is the ability to reform a written instrument to make it conform to the intentions of the parties. One ground for invoking such extraordinary authority exists where, through a mutual mistake, the parties' intention is not correctly expressed. *Original Church of God v. Perkins*, 292 Ala. 283, 293 So.2d 292 (1974). Where reformation is sought solely upon the ground of mistake, mutuality of mistake is an essential prerequisite to relief. *Mid-State Homes, Inc. v. Anderton*, 291 Ala. 536, 283 So.2d 426 (1973). A mistake within the meaning of equity is "an erroneous mental condition, conception, or conviction induced by ignorance, misapprehension or misunderstanding the truth, *but without negligence* and resulting in some act or omission done or suffered erroneously by one or both of the parties to a transaction, but without its erroneous character being intended or known at the time." (Emphasis added.) *Springdale Gayfer's Store Co. v. D. H. Holmes Co.*, 281 Ala. 267, 201 So.2d 855, 865 (1967). This court is mindful that in some situations negligence may not of itself be sufficient ground for refusing relief from a mutual mistake in a deed, if it appears that the other party has not been prejudiced. When one party has been prejudiced by the negligence of the other, it is a sufficient bar

to reformation. In the present case, Grenn, et al., were guilty of negligence in the first instance to the prejudice of Williams. If the Williams-Grenn deed were reformed as sought by the defendants in counterclaim, the interest in 7.5 mineral acres of oil-producing property would be taken from the plaintiffs to compensate the defendants for partial title failure. Plaintiffs' incurrence of such a prejudicial loss would be the result of "culpable and injurious negligence" whose existence in this case functions as a bar to equitable relief in the form of reformation. *Taylor v. Burns*, 250 Ala. 218, 34 So.2d 5, 8 (1948).

■ An erroneous description merely a draftsman's error, establishes mutuality of mistake sufficient to invoke the equitable remedy of reformation. *Hughes v. Baker*, 217 Ala. 81, 114 So. 688 (1927); *Fidelity Serv. Ins. Co. v. A. B. Legg & Sons Burial Ins. Co.*, 274 Ala. 94, 145 So.2d 811 (1962). See page 815.

■ This court, however, is of the opinion that the grantees' agents' actions went far beyond that of mere draftsman. Grenn, et al., conducted a title search for their own benefit and represented to Williams, an illiterate, elderly man, 80 plus years of age, practically blind, in ill health and near death, that he had certain undivided mineral and royalty interests in 55 acres in designated tracts in Section 20 which they want him to convey for $150.00 an acre. Grenn, et al., were young, vigorous men, highly aware of the speculative aspects of their venture and aware of Williams' reluctance to sell. The error in the deed description cannot be imputed to Williams. The Alabama Supreme Court has stated "when one undertakes gratuitously to perform some act with respect to the property of another, he is not bound to do it; but, if the act is performed, it must be done with some degree of care, and the mandatory will be held responsible for an injury or loss that may result from want of due care in the manner of his performance." *Melbourne v. Louisville & N. R. Co.*, 88 Ala. 443, 6 So. 762, 763 (1889). Grenn, et al., knew Williams was relying upon them to conduct the

title search and determine the correct number of acres in which he had fractional undivided mineral and royalty interests in those designated tracts which he could convey. This reliance, coupled with Williams' infirmities, placed a heavy burden on Grenn, et al., to exercise due care. They cannot now complain of an error in the deed description due to their own negligence in carrying out a totally self-appointed duty. In addition, in order for Grenn, et al., to invoke the equitable powers of the court, they have the burden to state precisely the facts constituting the mistake, which also go to show that it occurred without negligence on their part. *Pearson v. Dancy*, 144 Ala. 427, 39 So. 474 (1905); *Atlas Assur. Co. v. Byrne*, 235 Ala. 281, 178 So. 451 (1938). They have not met this burden. The evidence, to the contrary, establishes it was their negligence which occasioned the mistake.

■ Assuming, *arguendo*, that the mistake by Grenn, et al., was a mistake within the purview of equity and not caused by their own negligence, the court finds that there is still not an appropriate case for reformation. As noted, mutuality of mistake is essential for reformation. Before an equity court grants relief on a mutual mistake the party seeking reformation has the burden to establish the agreement as written does not express the true intentions of the parties, but also *what*, in fact, the parties intended it should contain. *Duckett v. Lipscomb*, 287 Ala. 668, 255 So.2d 12 (1971). There is no ambiguity in the present deed. The recitation of fractional interests is equal to the number of mineral acres conveyed. If as contended by Grenn, et al., the deed does not express the true intentions of the parties, what ancillary agreement can this court look to in order to reform the deed to express that agreement? What clear and convincing evidence have Grenn, et al., offered as to other land in Section 20 that Williams would have conveyed had he been aware there was a 7.5 acre shortage? None.

For this court to grant the relief sought by way of reformation, it would in reality

be creating a contract into which the parties did not enter nor intend to enter. What land would Williams have agreed to sell Grenn, et al., in lieu of the land described in the deed? Certainly he would not have conveyed an interest in other Section 20 lands not designated. He probably would have conveyed only the 47.5 acres. He may not have conveyed any.

 Reformation is merely a device whereby a court, upon proof of a mutual mistake and a showing of what the true agreement is, will give effect to the instrument in accordance with the *real* agreement of the parties. Grenn, et al., have presented no evidence as to what particular land, if any, Williams agreed, or would have agreed, to sell them, other than the land as enumerated in the deed. Therefore, this court finds that reformation would result in the creation of a contract which the parties did not intend nor did enter into. This court is unwilling to exercise its equitable powers of reformation under these circumstances.

2. Texas Law of Replacement of Deeded Land Upon Partial Title Failure.

Defendants in counterclaim have advanced a novel reformation theory based upon Texas property law. Under certain prescribed circumstances, Texas courts have compensated grantees who have suffered partial title failure through substitution of propinquant land interests of the grantor in order to make up for the deficiency. In *Daniel v. Allen*, 129 S.W.2d 392 (Tex.Civ. App.—Texarkana 1939), where the grantee demanded as relief an increase in his interest in land to which title did *not* fail, the court spoke of the requisite elements of the "replacement" remedy.

"Had [grantor's] deed conveyed to [grantee] 'an undivided 11,250 square feet' or '11,250 square feet undivided' in the six lots, [grantee] would have been entitled to take his 11,250 square feet out of that portion of the land to which title of his grantors had not failed. 'The law is well settled that where one conveys by general warranty deed a specific number of undivided acres out of a larger or several tracts of land, from which grantor has already conveyed a part, the deed conveys to grantee good title to his complement of acres out of the remainder of the land.' *Crayton v. Phillips*, Tex.Civ. App., 297 S.W. 888, 890."

*Id.* at 393. In denying the extraordinary relief the court went on to examine

"the character of grant contained in [grantor's] deeds. His deeds do not purport to convey any specific number of square feet undivided out of said six lots. His deeds convey *an undivided ¼ interest* in each and all parts of the land, and upon failure of title to any part [grantee] must look to his warranty. He is not entitled to have other lands belonging to the grantor set off or decreed to him in lieu of that to which his title has failed."

*Id.* (emphasis supplied). This court must determine the character of the Williams-Grenn deed in reaching its decision on whether to take other remaining land interests of the plaintiffs' class in Section 20 that flowed to them from the grantor Williams and award them to the defendants in counterclaim as relief.

 The 1970 Williams-Grenn deed resembles the conveyance instruments in "a surprisingly large number of cases [wherein] undivided interests are conveyed both by fraction and by mineral acres." Williams and Meyers, *Oil and Gas Law*, § 320.2, p. 669 (1972). Not only were undivided one-eighth, one-fourth, and one-half interests in certain tracts in Section 20 conveyed by Williams but also the stated intention of the grantor, as typed on the face of the 1970 deed, was to convey "an undivided full Fifty-Five (55) Mineral acres. . . ." The leading commentators in the field of oil and gas law have stated that "[when] this occurs the two provisions in the deed are necessarily in conflict if the tract contains acreage in an amount different from that supposed when the deed is made." *Id.* at 669–70. Such are the facts in the case before the court with title failure as to 7.5 mineral acres. The determination of which provision is to take precedence should be

gleaned from the contents and effect of the instrument in issue.

In the Williams-Grenn transaction of April 16, 1970, "[t]he printed form of deed which was used was a R–101, 'Mineral Right and Royalty Transfer.' This form has been used in [Mississippi] for a long time." *Harris v. Griffith*, 210 So.2d 629, 633 (Miss.1968). "It is well known that unchanged [the R–101 form] has the effect of conveying a fractional interest in the minerals in place." *Id.* (emphasis supplied). Grantee Grenn, who prepared the deed, modified the Mississippi form document only by substituting the word "Alabama" for references to Mississippi and adding the inconsistent intention clause below the typed description of the land conveyed. In the *Harris* case from Mississippi, the parties to the deed made numerous substantive changes on the face of the document in addition to the inclusion of a statement of intention to grant a set number of full mineral acres. The *Harris* parties went so far as to change the title to "Mineral *Deed* and Royalty Transfer" as well as to omit all but the first sentence of the final printed paragraph. The "many changes, additions and deletions" prompted the Mississippi Supreme Court to decide that the *Harris* parties "clearly intended to change in a substantial way the effect of the instrument." *Id.* at 634. This court is unable to say that the Williams-Grenn deed was so changed as to functionally deviate from its intended course of "conveying a fractional interest" as construed by the highest court of the State wherein the deed form originated.

The intention clause typed into the Williams-Grenn deed was plainly incorporated into the agreement as added protection for the interests of the drafter-grantee Grenn. In the face of a partial title failure, the intention clause operates as an inconsistency, at odds with the bulk of the language that precedes its wording. The general rule of construction in dealing with ambiguities is to construe most strictly against the drafter of the instrument. In doing so, this court finds that the Williams-Grenn deed's purpose was to convey various undivided fractional interests in mineral acreage.

As discussed above, the drastic Texas remedy of replacement detailed in *Daniel* turns on the character of the deed. With this court's assessment of the Williams-Grenn deed as one that conveys undivided fractional interests, not one that merely conveys a set amount of undivided acreage, the *Daniel* decision dictates that "upon failure of title to any part [grantee] must look to his warranty. He is not entitled to have other lands belonging to the grantor set off or decreed to him . . . ." *Daniel, supra* at 393. Two fairly recent Texas decisions support this conclusion. In *Forrest v. Hanson*, 424 S.W.2d 899 (Tex.1968), the Supreme Court of Texas in refusing to satisfy a title failure with contiguous mineral interests of the grantor cited *Daniel* and stated that "[grantors] would only be liable for money damages for breach of warranty as to any mineral interest . . . their deed purported to convey but which they did not own. . . . [Grantee] is relegated to his claim for money compensation for the breach of warranty because of title failure." *Id.* at 905. In the later case, *Kelln v. Brownlee*, 517 S.W.2d 568 (Tex.Civ. App.—Amarillo 1974), the appellate court cited both *Daniel* and *Forrest* and announced:

> "In the case before us the deed purported to convey . . . a fractional undivided interest in the minerals . . . .
>
> \* \* \* \* \* \*
>
> At the time of the conveyances, grantors Kellns did not own an interest in all of Section 59, their interest being limited to an undivided interest . . . .
>
> \* \* \* \* \* \*
>
> [T]he rule [is] that upon failure of title to part of the land which a deed purports to convey, the grantee's remedy is for breach of warranty. He is not entitled to have other lands belonging to the grantor set off or decreed to him in lieu of that to which his title has failed."

*Id.* at 571.

In sum, the extraordinary Texas remedy alluded to in *Daniel* is unavailable to the defendants in counterclaim in this

action. This court should tread carefully when it looks to the case law of another state in the absence of Alabama oil and gas precedent or statutes on the subject. In the event that the court does resort to the law of other jurisdictions, it must hesitate in employing that law when there are factual variances and problems in its application. Here the court must refuse to use the law of Texas since the circumstances that warrant that state's courts to compensate a grantee who has suffered a partial title failure with other lands of the grantor are simply not present.

### B. Slander of Title

The plaintiffs filed a cross-claim against Grenn, et al., for slander of title. It is the opinion of this court that judgment be against the plaintiffs in this respect. A good faith claim with reference to plaintiffs' property based upon color of title on the part of defendants means that the plaintiffs' claim is not actionable in this state. Hill v. Ward, 13 Ala. 310, 313 (1848); Coffman v. Henderson, 9 Ala.App. 553, 63 So. 808, 810 (1913). In addition, this court finds that the essential element of malice on the part of the defendants is absent. Womack v. McDonald, 219 Ala. 75, 121 So. 57, 59 (1929).

### C. Competency of Grantor

The court is not convinced Williams was so mentally incompetent that the deed should be declared null and void. His condition was so infirm that Grenn, et al., should not profit by their error which led Williams into a contract he could not fully fulfill and which he could not reasonably have intended to convey more than he had.

### D. Plaintiffs' Non-Claim Statute Defense

Williams died in September 1970. Notification to Phillips of the claim alleging failure of title was submitted more than six (6) months after the letters testamentary were issued to Williams' executor. It is the plaintiffs' contention that this being a claim against the estate, it is barred by the six month non-claims statute of limitations. Title 61, Sec. 211, Code of Alabama (1940 Recomp. 1958).

The six months time limit contained within the non-claim statute is jurisdictional in the sense that it is not subject to waiver by the court. The very language of the statute makes it applicable to "all claims against the estate of the decedent."

Two exceptions to the non-claims statute involve contingent claims and claims of title against the estate. Duval's Heirs v. McLoskey, 1 Ala. 708 (1840).

The court finds Grenn, et al., not to have been barred in this claim by the Alabama non-claim statute, not only from an equitable but also from a legal standpoint.

It is undisputed that Grenn, et al., paid Williams for 55 mineral acres at $150.00 per acre. It would have been inequitable for the heirs of Williams to benefit from the consideration paid them by Grenn, et al., to keep the royalty payments from Phillips for 7.5 mineral acres and finally, to invoke a statutory bar against litigation of the issues by Grenn, et al.

It is therefore ORDERED, ADJUDGED, and DECREED that judgment be for Grenn, et al., on the plaintiffs' slander of title claim; that the plaintiffs make restitution to Grenn, et al., $1,788.00, that being 7.5 acres at $150.00, plus 6% interest from the date of the deed; and that the suspended royalty payments held in abeyance by Phillips Petroleum be paid to the plaintiffs pursuant to their stipulation for dismissal of December 22, 1976.

Costs are taxed against Grenn, et al.